Kotlikoff *v.* Master, Admrx, et al., Appellant.

Dershawitz *v.* Goldstein's Fruit & Produce, Inc., Appellant, et al.

Argued April 20, 1942. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Thomas E. Comber,* for appellant.

*Robert M. Bernstein,* with him *Milford J. Meyer,* for appellees.

OPINION BY MR. JUSTICE PATTERSON, June 29, 1942:
These appeals involve two actions in trespass arising out of the collision of a truck belonging to Goldstein's

Fruit & Produce, Inc., appellant, with an automobile in which appellees, Miriam Kotlikoff and Sue Dershawitz, together with three other girls, were riding as guest passengers. The driver of the automobile, Bernard Master, died as a result of the accident, as have also two of the girl passengers, and the surviving three of the occupants of the Master car, among whom are the appellees, sustained personal injuries. To recover for her injuries, Miriam Kotlikoff brought suit against Jeanne Master, administratrix of the deceased driver of the automobile, and a separate action was instituted by Sue Dershawitz against both Goldstein and Master's administratrix. In the action against her alone, the administratrix brought Goldstein and the driver of its truck, one Vernon Ford, upon the record as additional defendants, but Ford was subsequently eliminated as a party defendant by stipulation of counsel. The two actions were tried together before the court below and a jury, with the result that verdicts were rendered against Goldstein and in favor of appellees, Dershawitz and Kotlikoff, in the sums of $8,500 and $1,500, respectively, and a verdict was returned for Master's administratrix in each case. Motions for judgments non obstante veredicto filed by Goldstein were overruled by the court en banc, and we now have these appeals from the judgments entered in accordance with the verdicts.

The collision took place at a point along the Lincoln Highway, west of Devon, Chester County, on a hill sloping to the east, commonly known as Devon Hill. At the time of the accident, about 6:15 in the morning of January 15, 1940, the Master car was proceeding in a westerly direction, in the northernmost lane of the four-lane concrete highway, and the Goldstein truck was traveling eastward, in the southerly eastbound lane. Daylight was just breaking and the temperature was freezing in the vicinity of Devon Hill, with the result that a rain which had fallen was frozen to form a "pretty thick" layer of ice on the highway, extending from a point fifty feet west

of the crest of the hill to a point some distance beyond the bottom of the hill, to the east. Other than at this point the highway was free of ice but was wet for miles in both directions. Devon Hill is approximately two-tenths of a mile in length and curves slightly to the north, or to the right as one proceeds westward, but not sufficiently to obstruct the view of the entire grade. As the Master car neared Devon Hill, it was driven into the southerly westbound lane, for the purpose of overtaking and passing a milk truck it had been following, and at about the same time Goldstein's five-ton truck, with panel-type body, came around the curve at a speed estimated by appellees' witnesses to be forty-five to fifty miles per hour, fifteen to twenty miles per hour in excess of the statutory speed limit for this type of vehicle. After rounding the curve, the truck proceeded normally, in the southerly eastbound lane, for a distance of about 100 feet, then skidded and wavered between the southerly and northerly eastbound lanes for a distance of about 200 feet, and passed across the center line of the highway, into the southerly westbound lane, where it collided with the Master car, near the bottom of the hill, as it was in the act of overtaking the milk truck. Both vehicles burst into flames, with the unfortunate results already stated.

Evidence as to the excessive speed of the Goldstein vehicle, as it descended Devon Hill, was given by Sue Dershawitz, one of the appellees, and a wholly disinterested witness, one Dickerson, both of whom were permitted to testify to that fact over objection. It is urged that this testimony should have been excluded, on the ground that the witnesses "were not in such a position as the law requires to make them competent persons to compute or estimate the speed of the truck", and that with the evidence of excessive speed eliminated the case falls within the decision in *Master v. Goldstein's Fruit & Produce, Inc.*, 344 Pa. 1, where we sustained the action of the court below in entering judgment n. o. v. for Gold-

stein in an action for injuries to and the death of Master, brought by his widow. As an alternative ground for setting aside the verdicts, it is contended that the proximate cause of the accident was not the excessive speed of the Goldstein truck, but the icy condition of the highway, which it is urged constituted an independent intervening agency over which the driver of the truck had no control. We are of opinion that there is merit in neither of these contentions and that the action of the court below must be sustained.

Appellant's contention that the testimony of Dickerson as to speed should have been excluded, because the conditions for observation were not sufficiently favorable to make him a competent witness, is fundamentally unsound, for the reason that it is based upon a view of the conflicting evidence as to what such conditions were which assumes the truth of that favorable to its contention and entirely ignores the evidence in favor of the appellees. Viewing the evidence in the light most favorable to appellees, and resolving all conflicts therein in their favor, as we are required to do in view of the verdicts of the jury (*Borits v. Tarapchak,* 338 Pa. 289, 290), the record establishes that the witness was standing on the highway, about 150 feet east of the place where the accident occurred; that it was not dark, as appellant's witnesses testified, but that daylight was breaking, and it was sufficiently light that the truck itself, as well as its headlights, were visible; that there was no other traffic between the witness and the truck to interfere with his view; and that he observed the truck continuously from the time it came around the curve, 450 feet away, until the moment of impact. Under these circumstances, we cannot say the testimony of Dickerson, an automobile mechanic by occupation, that the truck was traveling at a speed of forty-five to fifty miles per hour and that it maintained this speed until the collision occurred, should have been excluded, as a matter of law, and particularly is this so in view of the testimony of two experts in the

matter of estimating the speed of oncoming vehicles, called by appellant, to the effect that under the conditions outlined above appellees' witnesses were in a position to estimate the speed of the oncoming truck with a fair degree of accuracy, which is all that is required. As stated in *Dugan v. Arthurs,* 230 Pa. 299, 303: "An expert witness or exact measurement by a speedometer is seldom available to a party who has been injured by the reckless conduct of a person operating such a machine, and to require such evidence in order to sustain an action would be unreasonable and work palpable injustice. Absolute accuracy is not required in such cases to make a witness competent to testify to the speed of the machine." While perhaps somewhat limited, Dickerson's opportunity for observation of the movements of the truck was certainly no more so than that of the witness to the speed of the oncoming train in *Muehlhof v. Reading Co.,* 309 Pa. 17. There the accident occurred at a grade crossing on a dark, foggy and misty morning, before daybreak; visibility was limited to a distance of 150 feet by reason of the atmospheric conditions; and the witness was in his truck, on the crossing, and was engaged in attempting to extricate himself from his perilous situation from the time he observed a light emerging out of the darkness, 300 feet away, until the collision occurred. The witness was, nevertheless, permitted to estimate the speed at which the train approached the crossing and, on appeal, this Court held that the evidence was properly admitted, stating as follows (p. 22) : "It is contended that [the witness] was incompetent to testify as to this fact (i. e., the speed of the train), in view of his limited opportunity for observation. He had been driving automobiles and trucks, and observing speedometers, for thirteen years. He was accustomed to judge speed and experienced in doing so. He saw the train approaching for 300 feet, and may have estimated its speed by the quickness with which it covered that distance. Under these circumstances, it cannot be said, as a matter

of law, that he was incompetent to express an opinion as to its speed: *Mellon v. Lehigh Valley R. R. Co.,* 282 Pa. 39. Competency for this purpose does not require the possession of technical or scientific knowledge; any intelligent person, accustomed to observing moving objects, is competent to testify to the speed of a railroad train out of his everyday experience, although the weight to be given his testimony—whether worth something or nothing, depending upon his opportunity for observation—is a question for the jury: *Dugan v. Arthurs,* 230 Pa. 299."

While it may be that the testimony given by the witness Dershawitz, who was riding on the front seat of the Master car, that the truck was traveling at a speed of forty-five miles an hour from the time she observed it, "about a city block away", until the accident occurred, would not, of itself, be sufficient to sustain a finding of excessive speed, in view of her admission that when she saw the truck for the first time "it was already zigzagging down the hill" and was then "apparently out of control", we think it was proper for consideration by the jury in connection with the other evidence in the case. Both Dickerson and one Sheeler, driver of the milk truck which the Master car was attempting to overtake and a principal witness for the appellant, although they differed in their estimates as to the speed of the Goldstein truck, testified that it maintained the same rate of speed after it became out of control, without increase or decrease, as when it was proceeding normally. In *Wenhold v. O'Dea,* 338 Pa. 33, relied upon by appellant, the testimony as to speed was held incompetent not because of the position of the witness, nor because estimates as to the speed of oncoming vehicles are inadmissible generally, but because the witness "based his opinion on some information he had learned since . . . from measurements and observations he made at the scene of the accident a week or two before the trial" rather than upon "what he saw at the time of the accident"; hence,

the decision there affords no basis whatever for excluding the evidence of either of the witnesses in the present case.

Were we to hold, contrary to the conclusion above stated, that the evidence of excessive speed should have been excluded as incompetent, appellant would still not be entitled to judgments non obstante veredicto. In *Stevenson v. Titus*, 332 Pa. 100, it was held, in a similar situation, as follows (pp. 102, 104) : "The fatal defect in plaintitff's verdict is that it was obtained wholly upon the testimony of an incompetent witness. . . . With the testimony of his father eliminated, plaintiff made out no case whatever. . . . If the incompetent testimony had been rejected, binding instructions for defendants would necessarily have followed. Since, however, the testimony was admitted, judgment n. o. v. cannot now be entered; the only remedy is to grant a new trial." The rule applicable in such cases is well stated in *Huffman v. Simmons*, 131 Pa. Superior Ct. 370, at page 374. ". . . in entering judgment non obstante veredicto under the Act of April 22, 1905, P. L. 286, the judgment must be entered upon the evidence in the record in the court below as it existed at the close of the trial: *Dalmas v. Kemble*, 215 Pa. 410. If upon consideration of the whole evidence 'it shall appear that a binding direction for either party would have been proper *at the close of the trial,* the court may enter judgment later with the same effect': Ibid, p. 413. But 'the court can neither eliminate evidence which may have been improperly admitted, nor insert offers of evidence which should have been admitted but were excluded; the remedy in either case is a new trial': *Mincy v. Washington Nat'l. Ins. Co.*, 130 Pa. Superior Ct. 285." See also *Dixon v. Metro. Life Ins. Co.*, 136 Pa. Superior Ct. 573, 578; *Heffron v. Prudential Ins. Co.*, 137 Pa. Superior Ct. 69, 72. With the testimony as to excessive speed forming part of the record, the evidence was clearly sufficient to support a finding of negligent operation on the part of appellant's driver, and the court

below would have grievously erred had it entered judgments for appellant under these circumstances. If it was thought that the admission of this evidence was error, appellant's remedy was a motion for new trial, not for judgments in its favor on the record with the evidence excluded. Appellant, however, made no such application, but, on the contrary, quite apparently elected to stand on its motions for judgment and to take its chances thereon on appeal.

The remaining contention, that excessive speed, even if sufficiently established, was not the proximate cause of the accident, hardly merits serious consideration. It is fully answered by the decision in *Knoble v. Ritter*, 145 Pa. Superior Ct. 149, a case substantially analagous in its factual and legal aspects to the case in hand. The court there overruled a similar contention in the following language, which fits the present case almost perfectly (p. 154) : "The contention of defendant is that plaintiff's injuries and property damage were caused by the intervention of an independent agency over which defendant had no control, to wit, ice on the highway. But we think that the evidence was sufficient for the jury to find that skidding of defendant's car resulted from her own negligence, and, the jury having so found, that she was liable for the consequences. We have here more than the fact that defendant's car skidded. There was testimony that she was driving it at a rate of 50 to 60 miles per hour, and knew or should have known of the icy condition of the highway. She was familiar with this portion of the highway, and knew of the curve and steep grade down which her car had to travel. According to the testimony, she traveled from 100 to 200 feet on the icy highway before she approached the crest of the hill. It was dusk, was raining, and ice had formed on the concrete. Consequently, when she descended the hill at a speed of 50 to 60 miles per hour she lost control of her car on the icy pavement, causing the damages and injuries to plaintiffs. The jury was justified in concluding

that defendant failed to operate her car in such manner as was consistent with the circumstances and the rights of others on, or in the vicinity of, the highway." See also *Luderer v. Moore*, 313 Pa. 71; *Cook v. Miller Transport Co.*, 319 Pa. 85.

In the *Master* case, supra, the evidence, which did not include the testimony of either of the witnesses to excessive speed in the present case, fixed the speed of the Goldstein truck, as it descended Devon Hill, at fifteen to twenty miles an hour. Moreover, the testimony in that case, all of which came from the plaintiff's own witnesses, established that there was no ice at any point on the highway except on the surface of the hill. In short, the evidence there adduced proved merely that the truck skidded and nothing more, whereas the record here is much fuller. As the opinion of the court below states: "In addition to the testimony as to skidding, there was evidence that Ford, the driver of the Goldstein truck, was thoroughly familiar with the road; that it had rained earlier and that the weather was freezing; that the layer of ice on the highway at the point in question extended approximately fifty feet west of the top of Devon Hill; and, in contradistinction to the testimony in the *Master* case, that the Goldstein truck had been traveling at a speed of forty-five to fifty miles per hour." Although it is possible that the true facts are as testified by the witnesses at the trial of the *Master* case, it is equally conceivable that the version given by the witnesses in the present case is the correct one. However this may be, we must abide by the present record as containing the only evidence for examination, and so doing there is evidence in addition to the fact of skidding sufficient to form the basis of a reasonable inference of lack of due care on the part of the driver of the Goldstein truck, for the consequences of which it is responsible: *Knoble v. Ritter*, supra.

Judgments affirmed.