Githens, Rexsamer & Company, Inc., Appellant, *v.* Wildstein.

Argued November 29, 1967.  Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Richard W. Hopkins*, with him *John Francis Gough*, and *White and Williams*, for plaintiff.

*Harry A. Short, Jr.*, with him *Liebert, Harvey, Bechtle, Herting & Short*, for defendants.

Opinion by Mr. Justice Eagen, January 3, 1968:

A fire, originating in a building occupied and used by the defendants as a warehouse in the city of Philadelphia, spread to an adjoining commercial property owned by the plaintiff, causing substantial damage. The latter instituted this action of trespass seeking compensation for its loss, alleging that negligence on the part of the defendants caused the fire. A jury trial resulted in a verdict for the plaintiff in the sum of $55,000. The court en banc awarded a new trial, but denied defendants' motion for judgment notwithstanding the verdict. Both sides appealed. We affirm.

A Captain Reeves of the fire marshal's office of the City of Philadelphia investigated the fire and requested the Department of Licenses and Inspections of the city to have one of its electrical inspectors join in an inspection of the property where the fire originated. As a result, James Lonergan, an electrical inspector of the department, accompanied Reeves to the site and made an inspection of that portion of the defendants' property not destroyed by the fire.

Mr. Lonergan died before trial, however another employee of the department testified. He produced and identified two documents from the department's files: (1) entitled "Electrical Wiring and Equipment Inspection, Final Notice"; and (2) a memorandum handwritten on two sheets of paper by Lonergan. The first document was on an official form supplied by the department to its employees for making reports following an inspection. Nothing in this report indicated a violation of any particular regulation under the department's jurisdiction. The second document stated, inter alia, that during his inspection of the refrigerator room on the second floor, Lonergan found "that the area mostly charred was at the blower fan on the refrigerating system"; also, that an electrical motor of 1/20 horsepower which drives the cold air through the

refrigerator fins was fused at 20 amperes and "the rear of the motor . . . [either due to lack of lubrication or friction] became ignited and blew the flames through the refrigerated fins igniting the insulation on the ceiling."

Over objection, the handwritten document, described before, was admitted as trial evidence. The lower court en banc subsequently ruled that this was error and of such prejudicial consequence that a new trial was required. We agree. That it constituted a major link in plaintiff's proof of causation and negligence is unquestioned. In fact, it was in large part the basis of a hypothetical question posed to an expert witness called by the plaintiff, which drew in response the opinion that the fusing of the particular motor at 20 amperes was so high as to cause the motor to overheat and continue so for an unreasonable length of time and eventually to catch on fire.

The memorandum involved was hearsay and admissible only if it falls within an exception to the hearsay rule.

Two exceptions are pertinent: (1) Business records, admissible under the Uniform Business Records as Evidence Act, Act of May 4, 1939, P. L. 42, §2, 28 P.S. §91b.; and (2) An official statement or testimonial assertion prepared by a public official pursuant to an official duty. We are persuaded that the memorandum does not come within either exception.

To be admissible as a business record under the Act of 1939, supra, it is necessary that the testimony establish that the memorandum was made in the regular course of business of the department.[1] See *Common-*

---

[1] Section 2 of the Act of 1939, P. L. 42, 28 P.S. §91b. of 1939, provides: "A record of an act, condition or event shall, in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the

*wealth v. Perdok,* 411 Pa. 301, 192 A. 2d 221 (1963). But the undisputed evidence establishes that investigating the cause of fires is not the business of the department. Under the city's fire code (§5-4102(1)), the fire marshal's office is specifically charged with the investigation of fires and their causes. This particular responsibility is not within the province of the department. While the fire marshal's office did request the assistance of the department in the instant case, as it did on other occasions[2] where it suspected fires to be of electrical origin, the department in rendering such assistance was not acting within the scope of its duty and the memorandum was not "made in the regular course of [its] business" in the sense contemplated by the statute. Subsection 2 of §5-4102 of the city's fire code, cited by the plaintiff, does not give the department any responsibility in connection with the investigation of fires. In addition, to be admissible as a business record under the Act of 1939, supra, there must be evidence that the memorandum was made "at or near the time of the . . . event." See *Commonwealth v. Perdok,* supra. Testimony as to when the memorandum here involved was prepared or filed is lacking in the record.

For the memorandum involved to be admissible under the official statement or testimonial assertion of a public official exception, it is necessary that the evidence show that it was prepared pursuant to an official duty. See V Wigmore, Evidence §1630 et seq. (3rd ed. 1940), and *Commonwealth v. Perdok,* supra. As noted before, it was not part of the official duty of the department to investigate fires and it was not within its responsibility to keep records in connection therewith.

time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission."

[2] Such requests are relatively few each year.

It is all important that there is no duty imposed on the department or any of its employees to make a statement on the specific subject matter involved. Hence the memorandum does not come within this exception to the hearsay rule. See V Wigmore, Evidence §1633 (4) (3rd ed. 1940).

Another error at trial necessitated the lower court's grant of a new trial.

The trial judge charged the jury that the doctrine of exclusive control applies to the facts presented and casts upon the defendants the burden of producing evidence of due care. This doctrine has no application here.

As we stated in *Izzi v. Phila. Transportation Co.*, 412 Pa. 559, 566, 195 A. 2d 784, 788 (1963): "The doctrine should be applied only where *all* of the following elements are present: (a) where the thing which caused the accident is under the exclusive control of or was made or manufactured by the defendant; *and* (b) the accident or injury would ordinarily not happen if the defendant exercised due care, or made or manufactured the article with due care; *and* (c) where the evidence of the cause of the injury or accident is not equally available to both parties, but is exclusively accessible to and within the possession of the defendant; *and* (d) the accident itself is very unusual or exceptional and the likelihood of harm to plaintiff or one of his class could reasonably have been foreseen and prevented by the exercise of due care; *and* (e) the general principles of negligence have not theretofore been applied to such facts."

In ruling that the doctrine did not apply in the instant case, the court en banc below correctly stated: "Applying the facts of this case to the elements required by the Izzi decision, supra, the first requirement is that 'the thing which caused the accident' must have been under the exclusive control of the defend-

ants. The purpose of this requirement, as set forth in Davies v. McDowell National Bank, 407 Pa. 209, 212, [180 A. 2d 21, 24 (1962)] is that 'those who *alone* know the facts are the ones who should in justice be called upon to reveal them.' (Emphasis supplied by court). 'The thing' which plaintiff contends caused the accident is the motor, which was allegedly improperly fused. This motor and the electrical system in question had been installed and maintained by Penn Jersey, an independent contractor selected by defendants. While this fact would not exonerate defendants from their duties as owners and occupants of the premises, it did negative the existence of the requirement that 'the thing' which caused the accident be in defendants' exclusive control.

"The second element required by the Izzi case is that the accident would ordinarily not have happened if the defendants had exercised due care, or, as stated in Mack v. Reading Company, 377 Pa. 135, 141, [103 A. 2d 749, 752 (1954)] the Court must determine, 'as a matter of common knowledge, that the nature of the occurrence was so unusual that, when it did occur, an inference would reasonably arise that it resulted from failure to exercise proper care.' While the fire in question may have been caused by defendants' negligence, we do not believe it is a matter of common knowledge that it would not have occurred unless defendants failed to exercise proper care.

"The third requirement of the Izzi case is that the evidence of the cause of the accident is not equally available to both parties, but is exclusively accessible to and within the possession of the defendants. Under the facts as presented, we do not believe that the evidence of the cause of the accident was exclusively accessible to defendants, as evidenced by the extensive opportunity to examine the premises which was afforded Lonergan, of the Department of Licenses and In-

spections, and Reeves, of the Fire Department. While, unfortunately for plaintiff, Lonergan died prior to trial and became unavailable as a witness, this does not affect the fact that access was available to others than defendants."

Finally, the court below correctly rejected the defendants' motion for judgment n.o.v. On the trial record, the issue was one for the jury to resolve. This may not be so if the incompetent evidence is rejected. But we need not reach that question. Judgment n.o.v. may not be entered on a "diminished record." See *Kotlikoff v. Master,* 345 Pa. 258, 27 A. 2d 35 (1942), and *Brandon v. Peoples Natural Gas Co.,* 417 Pa. 128, 207 A. 2d 843 (1965).

Order affirmed.

Mr. Justice ROBERTS concurs in the result.

Mr. Justice MUSMANNO dissents.