Carney *v.* Pennsylvania Railroad Company, Appellant.

McGoldrick *v.* Pennsylvania Railroad Company, Appellant.

490 

Argued November 22, 1967. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

 reargument refused April 9, 1968.

 

*F. Hastings Griffin, Jr.,* with him *William J. Kennedy,* and *Dechert, Price & Rhoads,* for appellant.

*James E. Beasley,* for appellees.

OPINION BY MR. JUSTICE COHEN, March 15, 1968:

These appeals have their genesis in wrongful death and survival actions instituted against the Pennsylvania Railroad Company. The actions arose out of an accident involving an automobile in which the decedents were passengers and a railroad switching engine owned and operated by defendant. The jury returned verdicts in favor of the plaintiffs in the amounts of $99,300 and $86,800, respectively. Thereupon, defendant filed motions for judgment notwithstanding the verdict and for a new trial in each case. From the denial of those motions defendant has appealed to our Court.

On the question of whether or not defendant is entitled to a new trial, we find it necessary to discuss and analyze only one of a multitude of errors allegedly committed by the court below during the course of the trial. Defendant assigns as error the admissibility of certain testimony given by an ex-police officer who had arrived at the scene a short time after the accident. With respect to the testimony being challenged, the colloquy of the court, counsel and the witness was as follows: "Q. (BY MR. BEASLEY:) When you arrived there, did you look at the engine to determine whether or not the lights were lit? A. There were no lights on the engine. In fact, I was informed by a witness who had been standing—MR. GRIFFIN: I object to this, Your Honor. I object to what he was informed by somebody. THE COURT: Sustained. BY MR. BEASLEY: Q. How soon after you got there did you see this witness? A. Immediately. When I seen the boys laying

on the highway—I think there were four of them lay-
ing on the highway. Q. At that time, what was this
witness? Did he come up to you very calmly? A. No,
no. Q. Don't tell us what he said. A. He came run-
ning up to me, very agitated. And he informed me as
to what he had seen."

[At this juncture a discussion occurred at sidebar
between the court and counsel concerning the admissi-
bility of the statement made by the unidentified by-
stander to the police officer after the accident. This
discussion commenced on Thursday, March 31, 1966,
continued into Friday, April 1 and was not finally
determined until Monday, April 4, at which time the
police officer was permitted to testify, over objection,
as to the statement made to him by the bystander.]

The police officer then testified as follows: "Q.
Tell the members of the jury what you observed about
the lighting conditions on the engine. A. Well, the en-
gine headlight was out. There was no light on the
headlight. And, of course, after I got out of the car,
a gentleman run up to me and excitedly said to me
that this car, this engine, had come out fast and that
it had no lights on it. And this again called it to my
attention. But I explained to the man that I had a
job to do, for him to stand on the side, that I wanted
to get these victims to the hospital . . . Q. Can you
identify or did you get the name of the man who came
up to you and said that the engine came out of the
pier without any light, and fast? A. No. Immediate-
ly after I had got these bodies or these victims into
the—seeing that they had been on the way to the hos-
pital, I walked over to a group of men who were stand-
ing there and asked who was the engineer."

There is no serious dispute that the statement of
the unidentified bystander clearly amounted to a hear-
say declaration, since it was proffered solely for the

purpose of proving the truth of the matter asserted, i.e., the engine came out too fast and had no lights on it. See 6 Wigmore, Evidence §1746 (3d ed. 1940). Therefore, in order for this testimony to be properly admitted in evidence, the proponent of such testimony must point to some exception to the hearsay rule which would justify the court in departing from the traditional notion that a party should not be deprived of the guaranty of truthfulness resulting from the oath of the declarant and the opportunity to cross-examine the declarant in order to test the accuracy of the observations upon which it was based. In the instant case plaintiffs rely upon the so-called res gestae exception to the hearsay rule in support of the admissibility of the alleged statement made by the unidentified bystander.

In *Allen v. Mack*, 345 Pa. 407, 410, 28 A. 2d 783 (1942), our Court enunciated a number of factors which, if present, would justify the admission of out-of-court statements under the doctrine of res gestae. In *Mack* the Court remarked: "A res gestae declaration may be defined as a spontaneous declaration by a person whose mind has been suddenly made subject to an over-powering emotion caused by some unexpected and shocking occurrence, which that person has just participated in or closely witnessed, and made in reference to some phase of that occurrence *which he perceived,* and this declaration must be made so near the occurrence both in time and place as to exclude the likelihood of its having emanated in whole or in part from his reflective faculties. In a res gestae declaration the exciting event speaks through the impulsive words of a participant or onlooker. It is in a psychological sense a part of the act itself. The apparent condition of the declarant's mind when the declaration is made is the test of the latter's admissibility as a

part of the res gestae. To make the declaration admissible the state of the declarant's mind as induced by the shock of the occurrence must be such as to integrate his spontaneous declaration exclusively with the occurrence itself." (Emphasis supplied.)

As indicated in *Mack,* obvious reasons dictate that hearsay statements proffered under the res gestae exception must appear to have been made by a declarant who has had an opportunity to observe personally the event or occurrence he is describing. See 6 Wigmore, Evidence §1751 (3d ed. 1940) ; Note, 127 A.L.R. 1030, 20 Am. Jur. Evidence, §674, 570. Consequently, the facts as disclosed by the record must indicate that the declarant actually witnessed the event to which his statements relate.

In *Beck v. Dye,* 200 Wash. 1, 10-11, 92 P. 2d 1113, 1117 (1939), the Supreme Court of Washington was confronted with a directly parallel factual situation involving the same legal question with respect to the application of the res gestae exception to the hearsay rule. In reversing the court below and ordering a new trial on the basis that declarant's utterances did not properly fall within the purview of the res gestae exception, the Court reasoned as follows: "It is purely a matter of speculation whether they themselves observed the condition of the signal light or were even in the vicinity when appellant drove into the intersection. For aught that the record discloses, they may have been repeating merely what others had told them, or perchance reconstructing the initial occurrence from what they finally saw. The evidence was not admissible as a part of the res gestae, in the absence of a showing that the declarants either participated in the transaction or witnessed the act, or fact, concerning which the declarations or statements were made. The term 'res gestae' is not a mere shibboleth by an indis-

criminate use of which every unsworn statement made during a particular transaction or occurrence is to be admitted. It is a doctrine which recognizes that, under certain circumstances, a declaration may be of such spontaneous utterance that, metaphorically, it is an event speaking through the person, as distinguished from a person merely narrating the details of an event."

In the instant case, the record discloses no evidence other than what might possibly be inferred from the declarant's statement that the unidentified bystander actually witnessed the collision between the automobile and the engine. It would only be mere speculation and surmise on the part of the court and the jury as to whether or not the declarant, who was not present in court for cross-examination or subject to depositions or interrogatories by opposing counsel, actually perceived the engine coming out fast with no lights on it. It is just as probable as in the *Beck* case, that the declarant was repeating what others had told him or drawing a conclusion from what he had witnessed after the collision. The inadmissibility of hearsay statements made under similar facts and circumstances is amply supported by numerous case authority in other jurisdictions. See *Ungefug v. D'Ambrosia,* 58 Cal. Rptr. 223 (1967); *Potter v. Baker,* 162 Ohio St. 488, 124 N.E. 2d 140 (1955); *Pillet v. Ershick,* 126 So. 784 (1930); *Hines v. Patterson,* 225 S.W. 642 (1920). Curiously, plaintiffs have not referred us to one case in any jurisdiction which supports the admissibility of their proffered testimony. The only case which might furnish some authority for its admission is *Armborst v. Cincinnati Traction Co.,* 25 F. 2d 240 (1928). However, this case not only fails to offer any rationale to support the admissibility of out-of-court statements uttered by unidentified bystanders without a showing that such bystander was an eyewitness, but further-

more the vitality of the case has been seriously undermined by subsequent Ohio cases wherein the Ohio courts have refused to adhere to the position adopted by the 6th Circuit Court of Appeals in the *Armborst* case. *Potter v. Baker,* 162 Ohio St. 488, 124 N.E. 2d 140 (1955).

Moreover, the fundamental basis for admitting purely hearsay statements under the res gestae exception is the recognition that under certain circumstances, based on our experience, the utterances may be taken as particularly trustworthy and as an accurate reflection of what the declarant actually observed. See 6 Wigmore, Evidence §1747 (3d ed. 1940). We are of the opinion that out-of-court assertions made by unidentified bystanders who may or may not have actually witnessed the litigated event are not properly admissible as part of the res gestae because their admission would not be consonant with the underlying philosophy of the hearsay rule and the res gestae exception. The mere fact that the police officer inferred from the statements that the declarant must have witnessed the collision, or that the declarant said he witnessed the collision, does not lend any more credence or trustworthiness to the out-of-court statements. In order to justify the admissibility of such testimony, it is incumbent upon the party seeking its admission to persuasively and convincingly demonstrate by the use of *other corroborating evidence* that the declarant actually viewed the event of which he speaks.

Plaintiffs also suggest that even if the police officer's testimony was improperly admitted, that taking all of the evidence into consideration, the disputed testimony becomes but a mere drop in a bucket and at best amounts to harmless error on the part of the trial judge. We disagree. It is virtually impossible to accurately assess the impact of the police officer's testi-

mony in the minds of the jurors, especially in view of the fact that the trial was delayed considerably in order for the court to consider its admissibility. Under these circumstances, it is inconceivable that such damaging testimony to the defendant could or would be considered harmless error. Since this part of the police officer's testimony was improperly admitted, the defendant is entitled to a new trial absent such testimony.

On the question of whether or not a judgment notwithstanding the verdict should have been entered in favor of defendant in each case, it is sufficient to point out that our Court has repeatedly held that a judgment notwithstanding the verdict cannot be entered on a diminished record. In *Cherry v. Mitosky*, 353 Pa. 401, 404, 45 A. 2d 23, 25 (1946), we stated: "If the evidence . . . was erroneously admitted, the only way that it could properly be excluded after trial was through the medium of a new trial. . . . The court could not, on . . . motion for judgment n.o.v., eliminate the evidence on the ground that it had been improperly received at trial and then dispose of the case on the basis of the diminished record. . . . *Non constat* that, had the assailed evidence been denied admission in the first instance, the plaintiffs would not have been able to supply other competent evidence." Also see *Brandon v. Peoples Natural Gas Company*, 417 Pa. 128, 207 A. 2d 843 (1965); *Kotlikoff v. Master*, 345 Pa. 258, 27 A. 2d 35 (1942).

We are of the opinion that viewing the entire record as a whole, including the improperly admitted testimony, the issue of defendant's negligence was properly submitted to the jury. Therefore, our only recourse is to remand the case for a new trial.

Judgment of the court below reversed and the case remanded for a new trial in accordance with this opinion.

Mr. Justice Jones and Mr. Justice Eagen concur in the result.

Mr. Justice Roberts dissents.

---

Dissenting Opinion by Mr. Justice Musmanno:

The ordering of a new trial in this case represents the acme in meaningless superfluity and the apex in blatant futility. The new trial is so unnecessary, so uncalled for, it subjects the litigating parties to such unrequired worry and expenditure of money, time and effort, that I can only regard the mandate of the Court in this case as a travesty on the processes of justice.

Thomas Carney and William McIntyre, young men, were killed in an accident which occurred nine years ago (May, 1959), when the automobile in which they were riding collided with a locomotive athwart the highway on which they were traveling. The administratrices of the estates of the deceased youths brought actions of trespass against the Pennsylvania Railroad Company which owned the fatal locomotive. The jury returned verdicts in favor of the plaintiffs. The defendant railroad company appealed, and this Court, speaking through the majority, has edicted a new trial. For a reason which defies established law, elementary logic, and fundamental common sense.

The jury believed the evidence that the defendant railroad company was negligent in the manner that its locomotive moved across the highway to become the executioners of the two youthful decedents. The trial lasted two weeks, the attorneys were very able men, the judge presided with learning, patience, and sound judgment. Yet the majority orders a new trial. The cost to the Commonwealth and to the litigants for a new trial will be enormous. The transcript of the record is made up of three encyclopedic-sized volumes;

photos and sketches make up another volume, the combined printed briefs number over 175 pages.

The jury found that the defendant was negligent and the appellant does not press for judgment n.o.v. *Why* the new trial? In the tidal wave of evidence establishing the defendant's negligence, the majority finds the bloated bubble of a technicality; in the overwhelming avalanche of proof of the plaintiffs' case, the majority finds a broken pebble of supposed incongruity; in the charging cavalry of facts, the majority finds a broken horseshoe of lopsided theory. And so, the case must be re-tried, and the whole story of the tragedy must be relived, the locomotive must shoot out into the highway, the automobile must crash into it, its passengers must be hurtled out to the street to death and mangling injury.

Why? The majority says that the trial court erred in allowing a police officer to testify to what an eyewitness of the tragedy told him. There is not the slightest reason to believe that, even without this testimony, the jury would have brought in a different verdict. The record demonstrates that the plaintiffs proved that the railroad locomotive (painted black) rolled, in the dead of dark night, without lights, without sounding a bell, without signalling its approach in any manner, into a public highway, and that the members of the train crew saw the decedents' car approaching and did nothing to avert the fatal encounter. There was also evidence that the conduct of those operating the locomotive constituted a violation of the railroad's safety rules. It cannot be argued that the verdict for the plaintiffs was against the weight of the evidence.

Emilio Fietta, sergeant of police of the City of Philadelphia, testified that he arrived at the scene of the accident within five minutes after it occurred. He testified that "the engine headlight was out. There was

no light on the headlight." Then, in narrating what had occurred he described the bodies lying on the street and then said that a man "came running up to me, very agitated, and he informed me as to what he had seen." ·

· · Defendant's counsel objected at this point and later, after the judge had ruled on the objection, the officer testified: "A. Well, the engine headlight was out. There was no light on the headlight. And, of course, after I got out of the car, a gentleman run up to me and excitedly said to me, that this car, this engine, had come out fast and that it had no lights on it. And this again called it to my attention. But I explained to the man that I had a job to do, for him to stand on the side, that I wanted to get these victims to the hospital."

The majority says that it was improper to allow Sergeant Fietta to relate what the eyewitness said. The eyewitness's statement came strictly within the res gestae rule which allows, as evidence, spoken declarations made by persons who are actors in, or spectators of, a dramatic event which forces spontaneous utterance. Fietta testified: "Q. How soon after you got there did this man come up and give you this piece of information? A. Immediately I stopped, he came running over to me. Q. Was anybody else present at the time he made the statement, besides you and him? A. Just me. I was the first man there. He came over to me. I assumed the fact that I had stripes on and I am a sergeant meant authority to him."

In *Allen v. Mack,* 345 Pa. 407, this Court said: "In a res gestae declaration the exciting event speaks through the impulsive words of a participant or onlooker. The apparent condition of the declarant's mind when the declaration is made is the test of the latter's admissibility as part of the res gestae. To make the declaration admissible the state of the de-

clarant's mind as induced by the shock of the occurrence must be such as to integrate his spontaneous declaration exclusively with the occurrence itself."

The majority cites this case and quotes from its definition of res gestae, but then apparently overlooks its clear language. The Majority Opinion says: "The facts must indicate that the declarant actually witnessed the event to which his statements relate." The Majority Opinion not only treats lightly the very authority it cites but completely disregards the testimony of Sergeant Fietta because he specifically said that the declarant had witnessed the accident, namely, "He informed me as to what *he had seen*." (Emphasis supplied.)

The majority introduces into its discussion a wholly inapplicable case, *Beck v. Dye,* 200 Wash. 1. The very passage the majority quotes from in that case shows that its facts are as far from those in the case at bar as the state of Washington is from Pennsylvania. I quote from the *Beck* case, as it appears in the Majority Opinion: "It is purely a matter of speculation whether they themselves observed the condition of the signal light or were even in the vicinity when appellant drove into the intersection. For aught that the record discloses, they may have been repeating merely what others had told them, or perchance reconstructing the initial occurrence from what they finally saw."

But it is not speculation as to whether the declarant in this case saw that the locomotive was without illumination and was traveling speedily. Fietta specifically said, and I repeat: "He came running up to me very agitated. And he informed me as to what *he had seen*." (Emphasis supplied).

The majority argues that it is possible the "declarant was repeating what others had told him." Of course, it is possible. Anything is possible in this sometimes

topsy-turvy world, but as appellate judges we decide cases not on dreamed-up possibilities but on what is before us. To dispute that the declarant did see the locomotive coming out "very fast" and that it had no lights, is to call on shadows to dispute the authenticated record.

Then the majority wants to make a point of the fact that the declarant was unidentified. How does that change the situation? Whether he had one name or a thousand names is of no consequence.

The majority would introduce into the res gestae rule an ingredient which would practically wipe out the efficacy of the rule. It says that an unknown bystander's declaration must not be accepted because he does not come into court "in order to test the accuracy of the observations upon which it was based." If the declarant could always be brought into court, there would be no need for the res gestae formula. Often the declaration comes from a person now deceased, or is swallowed up in the crowd or cannot be located. The majority misapprehends the quintessential nature of res gestae. It is not the person that becomes the evidence, it is the involuntary, spontaneous ejaculation, it is the outcry, or outburst that writes itself into the controverted episode as spinning automobile wheels write their story into the dirt of the road and speak for themselves in an ensuing lawsuit.

The admissibility of the controverted declaration does not depend on who the declarant was. Wigmore, recognized authority on Evidence, clarifies this proposition: "That nervous excitement which renders an utterance admissible may exist equally for a *mere bystander* as well as for the injured or injuring person, and therefore the utterances of either, concerning what they observed, are equally admissible." (Wigmore on Evidence, 2d Ed. Vol. 3, §1755.) (Emphasis supplied.)

Thus, the anonymity of the declarant in the case at bar is wholly irrelevant, because his utterance is not regarded as the statement of a particular individual. It is merely one of the phenomena of the violent episode just as are the screeching of brakes, the skidding of tires, the cries of the injured. While the res gestae declaration is the product of vocal cords, it is an objective manifestation as much as the noise of a rifle shot. The res gestae declaration is the product of a person's shock, fright or amazement which spontaneously asserts itself just as lightning writes in the sky the message of the electric crash between rain clouds, while thunder growls the audible acknowledgment of that celestial encounter.

The declaration by the unknown witness to Sergeant Fietta is as much a part of this case as the photographs of the railroad tracks, and cannot be eliminated without derailing the train of evidence.

To send this case back for re-trial would constitute an act of injustice. Thomas Carney and William McIntyre were killed nine years ago. It is time to let their souls rest, and it is time that other cases waiting trial for many years should not be held up further while this litigation is being re-litigated, for no sensible purpose that I can see.

The wheels of the machinery of the law must be lubricated with common sense; otherwise they will grind to a halt. Those concerned with the administration of justice are concerned over the manner in which those wheels are slowing up in Philadelphia. We, as the Supreme Court of the State, should make every effort to accelerate the speed with which those wheels turn, not to pour sand into them, as the Majority Opinion does in ordering this wholly unnecessary, fantastically un-needed, and redundantly superfluous new trial.

I dissent.