532 A.2d 509

R. A. Freudig Associates, Petitioner *v.* Commonwealth of Pennsylvania, Insurance Department, Respondent.

Argued September 15, 1987, before Judges BARRY, and COLINS, and Senior Judge BARBIERI, sitting as a panel of three.

*Michael A. Dillon,* with him, *William R. Balaban,* for petitioner.

*Jean M. Callihan,* Assistant Counsel, with her, *Linda J. Wells,* Chief Counsel, for respondent.

*James J. Kutz, Shearer, Mette, Evans and Woodside,* for intervenor, Maryland Casualty Company.

OPINION BY SENIOR JUDGE BARBIERI, October 19, 1987:

This is an appeal by R. A. Freudig Associates, Petitioner, from an adjudication of the Pennsylvania Insurance Department (Department) upholding Maryland Casualty Company's (Maryland) termination of its agen-

cy agreement, and of the Department's order denying reconsideration of that order. Freudig argues that Maryland's termination of its agency agreement violates the provisions of the Act of September 22, 1978 (Act 143), P. L. 763, *as amended,* 40 P.S. §§241-246, and that the Department's administrative hearing did not comply with the procedural requirements of the Administrative Agency Law, 2 Pa. C. S. §§501-508. We shall affirm.

The following factual recitation is pertinent. Freudig and Maryland are authorized to transact the business of automobile insurance in this Commonwealth. Freudig had an agency agreement with Maryland that had been in existence for more than five years, bringing the termination of that agreement under the provisions of Act 143. In August, 1984, Maryland undertook a comprehensive review of all its agencies to determine whether any were to be placed in rehabilitation. The factors considered by Maryland included the agency's loss ratio, a continuing pattern or history of unsatisfactory losses, the best method of eliminating losses, the agency's payment history, and the agency's ability to conform with Maryland's immediate and future needs. As a result of that review, Maryland placed forty agencies, including Freudig, on rehabilitation plans in an attempt to increase productivity and profitability. Freudig was informed of Maryland's decision to place it in rehabilitation status and the terms and conditions of the rehabilitation plan on August 29, 1984. Freudig received written confirmation of the August 29, 1984, telephone conversation, on September 4, 1984. Freudig was under a twelve month rehabilitation plan due to its severe loss ratio over the previous three and one-half years. In late February, 1985, an agent licensed with Maryland by another agency became employed with Freudig and attempted to have her license transferred to Freudig but was not permitted to do so. Maryland did later issue

this agent a license. In March, 1985, Maryland's Resident Manager informed Freudig that its premium volume fell below the minimum amount discussed in the rehabilitation plan and that termination appeared in order. At Freudig's request, a meeting between Freudig and Maryland was held on June 7, 1985, as a result of which, Maryland altered the rehabilitation plan. The new terms of the rehabilitation plan were memorialized in a letter sent by Maryland to Freudig on June 10, 1985. Following revision of the rehabilitation plan, Maryland did provide assistance to Freudig and conducted several meetings and discussions with Freudig during the rehabilitation period. On March 6, 1986, Maryland notified Freudig that its agency agreement would be terminated as of May 17, 1986, since it failed to meet the goals of the rehabilitation plan. The Department ordered Maryland to reinstate the agency agreement as the termination date was not ninety days beyond the notification date as required by Section 2(a) of Act 143, 40 P.S. §242(a). Thereafter, on July 1, 1986, Maryland again notified Freudig that its agency agreement would be terminated as of November 1, 1986, for failing to comply with the rehabilitation plan. Freudig requested adminsitrative review by the Department under Section 2(d) of Act 143, 40 P.S. §242(d), and a formal hearing was held by the Department. Following that hearing, the Department issued an order and adjudication dated December 20, 1986, upholding Maryland's termination of Freudig's agency agreement. On January 12, 1987, the Department denied Freudig's request for reconsideration of its December 20, 1986, order and adjudication. This appeal followed.

Before this Court, Freudig argues that (1) the Department violated the procedural provisions of the Administrative Agency Law, 2 Pa. C. S. §§501-508, and its own regulations by permitting unreliable hearsay evi-

dence to be introduced at its hearing; and (2) that Maryland did not make a reasonable attempt to rehabilitate Freudig before terminating its agency agreement in violation of Section 2(e) of Act 143, 40 P.S. §242(e). Of course, our review of a Department adjudication is limited by Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704, to determining whether necessary findings are supported by substantial evidence, an error of law committed, and whether the procedural provisions of the Administrative Agency Law, 2 Pa. C. S. §§501-508, or any of the petitioner's constitutional rights have been violated. *Novak v. Insurance Department,* 106 Pa. Commonwealth Ct. 232, 525 A.2d 1258 (1987).

Freudig's first contention is that the Department violated its due process rights by permitting the introduction of what it terms "unreliable hearsay" in the form of four agency visitation reports. While the Department allowed the reports to be introduced into evidence as business records under Uniform Business Records as Evidence Act, 42 Pa. C. S. §6108, Freudig argues that the reports are not proper business records nor was a proper foundation laid for their admission as required by Section 2 of the Uniform Business Records as Evidence Act, 42 Pa. C. S. §6108(b). We are satisfied that the reports are properly characterized as "business records" and that a proper foundation was laid for their admission under 42 Pa. C. S. §6108(b).

In order for a document or record to be admissible under the Uniform Business Records as Evidence Act, the record must have been made in the regular course of business at or near the time of the event. *Githens, Rexsamer & Co. v. Wildstein,* 428 Pa. 201, 236 A.2d 792 (1968). There is no question that the agency visitation reports at issue here were made in the normal course of Maryland's business or that they were made at or near the time of the visits that are the subject of those

reports. Freudig challenges the reports' admission on the basis that the actual preparer was not present and subject to cross-examination. Our review of the business records exception does not require the presence of the actual preparer, only the testimony of a qualifying witness. The Pennsylvania Supreme Court has held that if a qualifying witness can provide sufficient information relating to the preparation and maintenance of the records to justify the presumption of trustworthiness for the business records exception, a sufficient basis is provided to offset the hearsay character of the evidence and it is not necessary to produce either the preparer or the custodian of the record at the time the entries were made. *In re Indyk's Estate,* 488 Pa. 567, 413 A.2d 371 (1979). The qualifying witness provided by Maryland was Robert Wise, its Resident Manager whose responsibilities include the review of agency visitation reports, including the reports at issue here. Mr. Wise testified that the reports were prepared by a subordinate of his and maintained for him by his secretary. We are satisfied that Mr. Wise was a qualified witness and that his testimony laid a proper foundation for the admission of the agency visitation reports into evidence as business records. We reject Freudig's assertion that he is not a qualified witness due to his lack of personal knowledge as to the facts contained in the reports, as such knowledge is not required by a qualifying witness in order to authenticate business records. *See Commonwealth v. Kelly,* 245 Pa. Superior Ct. 351, 369 A.2d 438 (1976), *aff'd,* 484 Pa. 527, 399 A.2d 1061 (1979), *appeal dismissed,* 444 U.S. 947 (1979).

We also note that Section 505 of the Administrative Agency Law, 2 Pa. C. S. §505, provides that proceedings before Commonwealth agencies are not governed by technical rules of evidence and that agencies may receive all evidence that is relevant and of reasonably pro-

bative value. *Pitch v. Pennsylvania Board of Probation and Parole,* 100 Pa. Commonwealth Ct. 114, 514 A.2d 638 (1986). Additionally, 1 Pa. Code §35.161 provides that relevant and material evidence shall be admissible in any proceeding before an agency and that evidence that is unduly repetitious or cumulative, or such evidence as is not of the kind that would affect reasonable and fair minded men in the conduct of their daily affairs is to be excluded. The agency visitation reports, made in conjunction with Maryland's rehabilitation plan for Freudig, the adequacy of which is at issue here, are clearly relevant to the proceedings before the Department. Additionally, we find that they are not unduly repetitious or cumulative or otherwise excludable under 1 Pa. Code §35.161.

In its other procedural challenge, Freudig asserts that the Department violated its own regulation, specifically 31 Pa. Code §56.3(b)(1), when it permitted Maryland to attach a sworn denial to its answer to Freudig's Requests for Admissions subsequent to the filing of that answer. The hearing officer found that Maryland's failure to attach a sworn denial to its answer was inadvertent and allowed the subsequent attachment. Freudig argues that the regulation does not allow subsequent attachment of sworn denials and that all twenty-five of its requested admissions must be deemed to be admitted. The hearing officer and the Department rejected this overly technical view of the regulation and found that the regulation does permit the amendment of an answer to Requests for Admissions to attach a sworn denial where the absence of such a denial from the original answer is inadvertent. Pennsylvania appellate courts have held on numerous occasions that an agency's interpretation of its own regulations is entitled to controlling weight so long as that interpretation is not clearly erroneous and is consistent with the regulation and with the

agency's enabling legislation. *See e.g., Wiley House v. Scanlon,* 502 Pa. 228, 465 A.2d 995 (1983); *Gundy v. Pennsylvania Board of Probation and Parole,* 82 Pa. Commonwealth Ct. 618, 478 A.2d 139 (1984). In view of the relaxed procedural and evidentiary rules that normally govern administrative proceedings, we find the Department's interpretation of 31 Pa. Code §56.3(b) to be consistent with that regulation and the enabling legislation and will accord it controlling weight.

Freudig's other contention is that the rehabilitation efforts of Maryland prior to terminating its agency agreement were not in compliance with 40 P.S. §242(e). Specifically, Freudig argues that Maryland's rehabilitation efforts were not reasonable in that Maryland failed to adequately indentify problems, set goals, present those goals to the agency, and offer assistance to the agency in meeting those goals. While we agree with Freudig that the issue of what constitutes a "reasonable attempt" within the meaning of 40 P.S. §242(e) is one of first impression, we decline to set a hard and fast rule on what will constitute a "reasonable attempt" so as to satisfy the statutory requirement, preferring to evaluate circumstances on a case-by-case basis. Viewing the record as a whole, we are satisfied that Maryland has made a reasonable attempt to rehabilitate Freudig and has satisfied the rehabilitation requirement of 40 P.S. §242(e).

Maryland's rehabilitation attempt with Freudig commenced in August, 1984, and, for all practical intents and purposes, concluded in March, 1986,[1] a peri-

---

[1] While Freudig's agency agreement was not officially terminated by Maryland until November 1, 1986, Maryland sent out its initial termination notice on March 6, 1986, to be effective May 17, 1986. This notice was later deemed insufficient by the Department on June 25, 1986, under 40 P.S. §242(b), due to Maryland's failure to provide Freudig with ninety days notice. Maryland's termination

od spanning nearly nineteen months. During that period of time, Maryland came up with two rehabilitation plans for Freudig, the latter plan being more specific with precisely set goals and objectives. Additionally, Maryland held meetings and discussions with Freudig to assist in the rehabilitation effort. There is no dispute that Freudig did not meet the goals set in the revised June, 1985, plan. The fact that Maryland did not wait until a full twelve months had passed from the June, 1985, revision of the rehabilitation plan does not make its efforts *per se* unreasonable. There is no minimum time period in 40 P.S. §242(e) for a plan of rehabilitation before it is considered as a "reasonable attempt." As did the Department, we reject Freudig's contention that Maryland blocked its attempt at rehabilitation by failing to license one of its employees. The employee in question, having joined Freudig from another agency in February, 1985, was later licensed after the initial confusion over the transfer of her prior license was cleared up. In view of the termination notice Maryland issued to Freudig on March 3, 1986, it is not unreasonable for it to refuse to renew licenses for Freudig's employees later that same month. Freudig's other allegations of unreasonable conduct on the part of Maryland during the period of rehabilitation, such as the issuance to Freudig of profit-sharing checks, are equally without merit.[2]

---

notice of July 1, 1986, effective November 1, 1986, indicates that it had abandoned any attempt at rehabilitating Freudig as of March 6, 1986.

[2] Freudig also contends that Maryland unreasonably failed to communicate to it what Maryland considered to be an acceptable loss ratio. The Department found that a figure of 65% is accepted as an industry-wide acceptable loss ratio and that Freudig and its employees, as professionals in the industry, were aware or should have been aware of that figure. For the calendar year 1985, Freudig's total loss ratio was 270% and its four-year average for the years 1982 through 1985 stood at 118.5%.

In view of the foregoing, we shall affirm the orders of the Department upholding Maryland's termination of Freudig's agency agreement and denying reconsideration of that termination order.

## ORDER

Now, October 19, 1987, the Orders of the Insurance Commissioner of Pennsylvania at Docket No. P86-7-20, dated December 20, 1986, and January 12, 1987, upholding the termination of the agency agreement between R. A. Freudig Associates and Maryland Casualty Company, and denying reconsideration of that termination order, are hereby affirmed.