544 A.2d 46

**Joseph SEMIERARO and Mary Ann Semieraro, his wife, Appellants,**

**v.**

**COMMONWEALTH UTILITY EQUIPMENT CORPORATION and Hunt–Pierce Corporation, Appellees.**

Supreme Court of Pennsylvania.

Argued March 11, 1988.

Decided July 14, 1988.

Dennis St. J. Mulvihill, Robb, Leonard & Mulvihill, Pittsburgh, for appellants.

C.S. Fossee, Pittsburgh, for Commonwealth Utility Equipment Corp.

Zan I. Hodzic, Asst. City Sol., Pittsburgh, for City of Pittsburgh.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and STOUT, JJ.

## OPINION OF THE COURT

LARSEN, Justice.

The issue in this case is whether the trial court erred in permitting a witness to testify as to his discussion with an out-of-court declarant who told the witness about the con-

clusion contained in a report which was prepared by experts who were not called to testify at trial.

On July 16, 1981, appellant, Joseph Semieraro, was inspecting an old stone bridge for his employer, the City of Pittsburgh (City), when the underbridge inspection truck, which appellant was operating from a bucket suspended from the truck over the side of the bridge, tipped and fell off the bridge and into a ravine seventy feet below. Appellant suffered severe personal injuries. Appellant and his wife filed a complaint in trespass and assumpsit against appellees, Commonwealth Utility Equipment Corporation (CUECO) and Hunt–Pierce Corporation,[1] the seller and manufacturer of the truck, respectively. To recover damages for the loss of the truck, the City also filed a complaint in trespass and assumpsit against appellees, and the two cases were consolidated for trial before a jury in the Court of Common Pleas of Allegheny County.

During the trial, the president of appellee CUECO, Anthony Closkey, was permitted to testify, over objection, that he had been told by a City employee (Louis Gaetano) that the experts hired by the City to investigate the accident had concluded that the underbridge inspection truck was stable. Specifically, the exchange between counsel for appellee CUECO and Closkey was as follows:

Q. ... During your conversations with Mr. Gaetano, did he ever mention the subject of the results of any studies done by the City of Pittsburgh?

A. Yes, he did.

Q. And what did he say with regard to those studies?

A. He said the studies showed that the final conclusion was—one of the things in the final conclusion was that the unit was stable.

Trial Transcript, Vol. III, at 1249–50 (Jan. 23, 1984) (objection was raised at sidebar prior to quoted exchange).

---

1. Hunt–Pierce did not participate in the trial, and, according to the testimony of the president of CUECO, had gone out of business prior to trial.

The jury returned a verdict in favor of appellees CUECO and Hunt–Pierce Corporation. The trial court denied the post-trial motions of the City and appellants, finding that the testimony of Closkey was admissible against the City and that the testimony was "error in the abstract" even if it were improper hearsay because stability was not at issue in the case. Opinion of the Trial Court at 7–8 (May 24, 1985). Superior Court, in a memorandum opinion, 515 A.2d 623, affirmed. We granted appellants' petition for allowance of appeal and we now reverse.

An out-of-court declaration constitutes hearsay if it is offered for the purpose of proving the truth of the matter contained in the declaration. *Carney v. Pennsylvania Railroad Co.*, 428 Pa. 489, 240 A.2d 71 (1968). In the case presently before this Court, Gaetano's out-of-court declaration was introduced to prove the truth of an out-of-court written declaration which was introduced to prove the truth of the non-testifying experts' opinion that the underbridge inspection truck was stable. This is hearsay upon hearsay. It is well established that a report prepared by an expert who is not called to testify as a witness is hearsay. *Pompa v. Hojancki*, 445 Pa. 42, 281 A.2d 886 (1971). This can be no less true where an employee of a party discusses the conclusion reached by experts with a witness who is testifying at trial.

As so eloquently stated by Mr. Justice Musmanno:

[t]he primary object of a trial in our American courts is to bring to the tribunal, which is passing on the dispute involved, those persons who know of their own knowledge the facts to which they testify. If it were not for this absolute *sine qua non*, trials could be conducted on paper without the presence of a single flesh and blood witness. However, with such a pen-and-ink procedure, there would be no opportunity to check on testimonial defects such as fallacious memory, limited observation, purposeful distortions, and outright fabrication. The great engine of cross-examination would lie unused while error and perjury would travel untrammeledly to an unre-

liable and often-tainted judgment. Accordingly, nothing is more adamently established in our trial procedure than that no one may testify to what somebody else told him. He may only relate what is within the sphere of his own memory brought to him by the couriers of his own senses. While, of course, there are many so-called exceptions to this rule against hearsay, it will be noted upon analysis that they are actually not exceptions. In nearly every instance where the statement of others is allowed, the alleged hearsay is in itself a matter of original impression.

*Johnson v. Peoples Cab Co.*, 386 Pa. 513, 514–15, 126 A.2d 720, 721 (1956).

There is no exception to the hearsay rule which would permit the experts' opinion regarding the stability of the underbridge inspection truck to be admitted in this case. Therefore, we find that the trial court erred in admitting the testimony of Closkey regarding the experts' opinion. Not all trial errors, of course, constitute reversible error, thus we must also determine whether the erroneous admission of this testimony was harmful to appellants. *Williams v. McClain*, 513 Pa. 300, 520 A.2d 1374 (1987).

A thorough reading of the trial transcript reveals that the stability of the underbridge inspection truck was the central issue in this products liability case. Among other defects cited, appellants' witnesses indicated that appellees CUECO and Hunt–Pierce were never able to correct a problem with the spring locks of the truck.[2] Trial Transcript, Vol. I at 461. When these spring locks were applied, they raised the back end of the truck several inches. *Id.* Partial spring lock slippage, which occurred on more than one occasion, caused the truck to visibly tip. *Id.* at 398. Appellants' expert testified that the underbridge inspection truck involved in the accident had only two spring locks, as opposed to other comparable models that were equipped with six

2. These devices were attached to the rear axles of the truck and were designed to provide the rigidity ordinarily associated with vehicles which have outriggers attached for stability.

spring locks, and that this made the truck "springier" on an uneven surface and vulnerable to spring lock slippage. Trial Transcript, Vol. II at 835. In the opinion of appellants' expert, the cause of the initial tip over of the truck was either a cracked frame or the partial slipping of a spring lock. *Id.* at 839. Appellee CUECO's expert disagreed with this analysis of the cause of the accident, and, indeed, appellee CUECO attempted to discredit the appellants' allegation of instability as the cause of the accident throughout the liability phase of the trial.

Because the experts hired by the City were never called to testify at trial regarding their opinion about the stability of the truck, appellants did not have an opportunity to challenge the experts' qualifications or to probe the method and results of the investigation to expose flaws or weaknesses. The jury was informed by CUECO's president, Closkey, that the experts hired by the City were professors from the University of Pittsburgh. Trial Transcript, Vol. III at 1242. Given the weight that a jury could have accorded this expert opinion, it is clear that the opinion of these experts may well have influenced the jury in reaching its verdict.

Accordingly, we reverse the order of Superior Court and remand for a new trial.

NIX, C.J., filed a dissenting opinion.

NIX, Chief Justice, dissenting.

The majority correctly frames the issue in this appeal as being "whether the trial court erred in permitting a witness to testify as to his discussion with an out-of-court declarant who told the witness about a conclusion contained in the report which was prepared by experts who were not called to testify at trial." Op. pg. 455–456. I disagree, however, with the majority's conclusion that the stability of the underbridge inspection truck was the central factual issue to be resolved by the jury in this case. To the contrary, it is this misperception that occasions the majority to reach a result which, in my judgment, is totally unwarranted. For the

reasons that follow, I am of the view that the objection raised is at best harmless error and, therefore, does not warrant the grant of a new trial. I would affirm the judgment entered by the trial court and affirmed by the Superior Court.

The jury in this case was never confronted with the question of the stability of the truck itself. Both the plaintiffs-appellants and defendant-appellee, Commonwealth Utility Equipment Corporation ("Commonwealth Utility"), agreed that it was pressure against the wall that caused the truck to fall into the ravine. This point was clearly charged to the jury and no exception was taken to that aspect of the charge.

> Now, then, the two experts, Mr. Meese, in behalf of the Plaintiff, and Mr. Shields, in behalf of the Defendant, Commonwealth Utility, interestingly enough as you observed, they both conclude that this machine or this unit went into the ravine because some beam on it was pressing against the bridge wall. So they both say that that is why it went into the ravine.

(N.T.) pg. 1671.

Further in the charge the trial court stated:

> ..., as I said, they both agree that it was pressure against the wall that caused the truck to go into the ravine.

(N.T.) pgs. 1672, 1673.

The issue that was placed before the jury, as framed by the court in the charge, was as follows:

> The difference between them is that Mr. Meese testified, testifying for the Plaintiff, said that it had already tilted to such a degree from some other cause prior to that pressure on the wall of the bridge, that the cable holding the electric wires had been crushed against the bridge, and this caused the electrical system to go berzerk [sic], and thus caused some beam or beams, whatever, to push against the wall. He said he didn't know necessarily what caused it to tilt in the first instance, but he gave as his opinion that it would have been from one of two

different causes. You can see the equipment was found in the ravine with the bed of the truck broken, and I understand that he said that that could have broke apart while the truck was standing on the bridge or that the interlock system or the spring lockouts—it's been called by two different or two other more different terms during the trial—would have come loose partly. In that connection, of course, it is pointed out by Mr. Shields, speaking for the Commonwealth Utility Equipment Corporation, you would regard that as farfetched. It is conceded that the interlock was properly fastened while the truck was on the bridge. At some point that he could not consider it to be within the realm of reason to say that it disengaged itself, and then reengaged itself completely as it was found in the ravine. The interlock was in proper position there. Nor did he, in response to Mr. Meese's view about the possibility of the truck bed breaking, think it was within the realm of likelihood or reasonable possibility that the bed of the truck would just break while it was standing on the bridge, and then of course,.... The difference being that Mr. Shields says that it was the same pressure that initiated the original tilting. It was the same thing, so to speak.

(N.T.) pgs. 1671–1673.

The majority obfuscates the distinction between the stability of the truck and the true issue that was being contested at trial. As the charge indicates, and no exception was taken to that portion of the charge, it was uncontested that the truck was stable as it sat on the bridge at the time of the accident. The question at issue was what caused it to become unstable and to fall over the edge of the bridge. The experts agreed that the truck was initially stable and that some type of outside force caused the vehicle to topple off the bridge. Plaintiffs-appellants did not assert the claim that an inherent instability of the truck was an issue. The testimony of the plaintiffs-appellants did not expressly or impliedly suggest that the bridge inspection unit was unstable.

As the above quoted portion of the charge indicates, Mr. Meese, plaintiffs-appellants' expert, suggested two possible theories as to why the otherwise stable truck tipped over. Thus the introduction of Mr. Gaetano's statement as to the truck being stable was not contradictory of any position offered by plaintiffs-appellants, but rather corroborative of a fact that plaintiffs-appellants did not contest. If we accept its hearsay quality in the case against plaintiffs-appellants, it would clearly amount to no more than harmless error.

Moreover, I am not satisfied that there was not a valid exception to the hearsay rule that would permit this evidence in the instant trial. The trial court permitted this testimony as an admission against appellants' co-party plaintiff, the City of Pittsburgh.[1] Admissions against interest are always competent as against the declarant, and Mr. Gaetano was a City employee at the time of the reported conversation. See G. Henry, *Pennsylvania Evidence* § 71 (4th Ed.1953); 4 Wigmore, *Evidence* § 1048 (Chadbourne rev. 1972).

Under the rationale of this Court in *McShain v. Indemnity Insurance Co. of North America*, 338 Pa. 113, 12 A.2d 59 (1940), it would be improper to permit this type of evidence where the effect of the admission would severely prejudice a co-party. However, we note that this objection is not the one focused upon by the majority in granting relief in this case. Moreover, for the reasons stated above, the evidence in this case does not severely prejudice plaintiffs-appellants, and, finally, the objection would be unavailing because it was not properly preserved. Once plaintiffs-appellants' objection to the testimony was overruled, it was then incumbent upon them to at least attempt to mitigate the perceived damage by seeking limiting instructions. No such request was made. See *Tagnani v. Lew*, 493 Pa. 371,

---

1. The statement made by Mr. Gaetano, a representative of the City, clearly was contrary to the City's position at trial. The City, a co-plaintiff, was seeking damages from Commonwealth Utility alleging that the equipment which it had purchased was defective.

426 A.2d 595 (1981); *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974).

I, therefore, am constrained to dissent.