604 A.2d 1131

**Constance B. FOSTER, Insurance Commissioner of the Commonwealth of Pennsylvania, Plaintiff,**

**v.**

**WESTMORELAND CASUALTY COMPANY, Defendant.**

Commonwealth Court of Pennsylvania.

Argued Nov. 18, 1991.

Decided Feb. 21, 1992.

Karl F. Frantz, Asst. Counsel, for plaintiff.

Allen C. Warshaw and Frederick T. Lachat, Jr., for defendant.

Before COLINS, PALLADINO and SMITH, JJ.

SMITH, Judge.

Before this Court are exceptions filed by two law firms, Gallagher, Reilly and Lachat (Gallagher) and Duane, Morris and Heckscher (Duane), collectively Claimants, to the hearing referee's findings of fact and recommendation that Claimants' claims for attorney's fees for services rendered to Westmoreland Casualty Company (Westmoreland) during its suspension be classified as general creditor claims under Section 544(b) of the Act of May 17, 1921, P.L. 789, commonly known as the Insurance Department Act (Act), *as amended,* 40 P.S. § 221.44(b).[1]

Westmoreland was suspended by the November 12, 1987 order of the Insurance Commissioner (Commissioner) and placed under supervision of the Commissioner. On September 27, 1988, pursuant to Section 520 of the Act, 40 P.S. § 221.20, this Court ordered Westmoreland liquidated finding that Westmoreland was insolvent, and appointed the Commissioner as liquidator.[2] On March 15, 1990, the Com-

---

**1.** The order of distribution of claims from the insurer's liquidated estate is set forth in Section 544 of the Act, which provides in pertinent part:

§ **221.44. Order of distribution**
    The order of distribution of claims from the insurer's estate shall be in accordance with the order in which each class of claims is herein set forth. Every claim in each class shall be paid in full or adequate funds retained for such payment before the members of the next class receive any payment. No subclasses shall be established within any class.
    . . . .
    (b) The costs and expenses of administration, including but not limited to the following: the actual and necessary costs of preserving or recovering the assets of the insurer, compensation for all services rendered in the liquidation; any necessary filing fees; the fees and mileage payable to witnesses; reasonable attorney's fees; the expenses of a guaranty association in handling claims.
    . . . .
        (d) Claims under nonassessable policies for unearned premium or other premium refunds and claims of general creditors.

**2.** Article V of the Act, 40 P.S. §§ 221.1–221.63, which governs suspension and involuntary dissolution of an insurance company, was added by Section 2 of the Act of December 14, 1977, P.L. 280. Upon liquidation of the insurance company, the liquidator is vested by operation of law with title to the insurer's assets as of the date of the filing of the petition for liquidation. Section 520(c) of the Act, 40 P.S.

missioner notified Claimants that their claims for unpaid attorney's fees would be classified as claims of general creditors under Section 544(d) of the Act. Following Claimants' timely objections, the Commissioner, pursuant to Section 541(b) of the Act, 40 P.S. § 221.41(b), filed a petition with this Court for appointment of a hearing referee.

On July 30, 1991, the court-appointed referee submitted to this Court his findings of fact and recommendation that Claimants' claims be classified as general creditor claims under Section 544(d). Claimants filed exceptions asserting that their attorney's fees should be evaluated as "costs and expenses of administration" under Section 544(b) and that the Commissioner is estopped from refusing to evaluate their claims under that section because Claimants justifiably relied upon assurance from the Insurance Department (Department) that the fees would be paid as administrative expenses. At issue here are those claims submitted after entry of the liquidation order.[3]

The following testimony was presented at hearings before the referee. Victor Mastalski, the Department's field examiner, was present at Westmoreland during its suspension, and all payments and expenditures of Westmoreland required his approval. December 12, 1990 Hearing, N.T., pp. 102–3. At Mr. Mastalski's direction, notices of suspension were sent to all creditors, policyholders and all other interested persons. Upon learning of Westmoreland's suspension, Thomas F. Reilly, Gallagher's partner, and Anthony J. Bilotti, Duane's partner, contacted William T. Cline, Westmoreland's chief in-house counsel, to inquire about

§ 221.20(c). The rights and liabilities of the insurer, its creditors, policyholders and all other persons interested in the insurer's assets become fixed as of the filing of the petition for liquidation. Section 520(d) of the Act, 40 P.S. § 221.20(d). Under Section 761(a)(3) of the Judicial Code, *as amended,* 42 Pa.C.S. § 761(a)(3), and Section 504(d) of the Act, 40 P.S. § 221.4(d), this Court has original jurisdiction over all actions arising under Article V of the Act and serves as the ultimate fact finder.

3. At oral argument, counsel for the Department represented that all bills which were timely submitted, i.e., prior to the liquidation order, will be paid.

payment of attorney's fees incurred during Westmoreland's suspension. Mr. Cline stated that Department officials who were responsible for supervising Westmoreland's operations assured him that bills for attorney's fees would be paid as administrative expenses. *Id.* at 11–15, 57–59. Thereafter, Westmoreland sent a letter, reviewed and approved by Mr. Mastalski, to all attorneys who handled claims for Westmoreland. The letter, dated December 4, 1987, stated in pertinent part:

> In the Department's effort to conserve the assets of the Company in accordance with the insurance law, they have restricted us from honoring your bills for work done prior to the date of the Suspension Order. Since the Department wishes Westmoreland Casualty Company to continue to make claim payments and to handle our claims in the normal manner, they have advised us that they will approve for payment any billing from your firm on our cases where the work performed falls after the suspension date.
>
> As a result, we would ask that you continue to handle our current cases based upon the Department's assurances that your fees for current work will be honored. We would ask that you review your file and send us invoices covering your work performed up to and including November 11, 1987. We would then ask that you bill us on a monthly basis if the amount warrants it, for all work performed from November 12, 1987 and forward.

During Westmoreland's suspension and liquidation, Ronald Chronister, Deputy Insurance Commissioner, was responsible for identifying insurance companies which were in financial trouble, overseeing the operation of suspended insurance companies and carrying out the Commissioner's responsibilities as liquidator. January 10, 1991 Hearing, N.T., pp. 174–75. Mr. Chronister testified that he reviewed the December 4, 1987 letter after it was sent and that the Department's policy as stated in the letter was correct, even though it did not state the Department's entire policy regarding payment of attorney's fees. He did not, however,

direct Mr. Mastalski to clarify the letter to reflect the entire policy. *Id.* at 210–11. He further testified that the Department wanted Westmoreland to continue to process worker's compensation claims to pay compensation to injured workers and at the same time to protect Westmoreland's assets by preventing overpayments. *Id.* at 208–9. Kenneth Wolensky, the Department's program analyst, testified that he advised all counsel, on behalf of Mr. Chronister, that their fees incurred during Westmoreland's suspension would be paid if submitted in a timely fashion, but did not advise them that bills submitted after entry of the liquidation order might not be paid. *Id.* at 241–42.

Claimants first argue that their attorney's fees for services rendered during Westmoreland's suspension fall within the category of costs and expenses of administration under Section 544(b) because their services provided in worker's compensation proceedings helped to preserve Westmoreland's assets by reducing its ongoing obligations. On the other hand, the Commissioner argues that costs and expenses of administration must be limited to the liquidator's expenses incurred after entry of the liquidation order in administering Westmoreland's liquidated assets, attempting to make a distinction between pre-liquidation work and services performed after liquidation. The Commissioner, however, agrees to treat as costs and expenses of administration those bills submitted by Claimants before entry of the liquidation order. Such an incongruous position advanced by the Commissioner is not supported by the classification of costs and expenses of administration under Section 544(b).[4]

4. The Commissioner cites *Greenfield v. Pennsylvania Ins. Guaranty Ass'n*, 256 Pa.Superior Ct. 136, 389 A.2d 638 (1978), as dispositive of the issue. *Greenfield* involved interpretation of the term "covered claims" contained in Section 201(b)(1)(i) of the Pennsylvania Insurance Guaranty Association Act, Act of November 25, 1970, P.L. 716, *as amended*, 40 P.S. § 1701.201(b)(1)(i). That section specifically provided that the only disbursements that the Association may make are "covered claims" which were defined as unpaid claims which arise under an insurance policy of an insolvent insurer. The Superior Court concluded that the law firm which provided legal services to the

It is unnecessary to address the question of whether Claimants' attorney's fees fall within the category of costs and expenses of administration under Section 544(b) because the facts support Claimants' contention that their claims must be paid under the doctrine of equitable estoppel. The Pennsylvania Supreme Court defined equitable estoppel as follows:

> Equitable estoppel is a doctrine that prevents one from doing an act differently than the manner in which another was induced by word or deed to expect. A doctrine sounding in equity, equitable estoppel recognizes that an informal promise implied by one's words, deeds or representations which leads another to rely justifiably thereon to his own injury or detriment, may be enforced in equity.

*Novelty Knitting Mills, Inc. v. Siskind,* 500 Pa. 432, 435, 457 A.2d 502, 503 (1983). The doctrine of estoppel may be asserted against a Commonwealth agency in Pennsylvania. *Chester Extended Care Center v. Department of Public Welfare,* 526 Pa. 350, 586 A.2d 379 (1991); *Yurick v. Commonwealth,* 130 Pa.Commonwealth Ct. 487, 568 A.2d 985 (1989). In order to apply the doctrine of equitable estoppel to a Commonwealth agency, the party to be estopped (1) must have intentionally or negligently misrepresented some material facts; (2) knowing or having reason to know that the other party would justifiably rely on the misrepresentation; and (3) induced the party to act to his or her detriment because of a justifiable reliance upon the misrepresented facts. *State Public School Building Authority v. Noble C. Quandel Co.,* 137 Pa.Commonwealth Ct. 252, 585 A.2d 1136 (1991). In addition, one who asserts estoppel must establish the essential elements by clear, precise, and unequivocal evidence. *Yurick.*

subsequently liquidated insurance company could not recover attorney's fees because the claim for attorney's fees was not a "covered claim." Since this Court is not concerned here about the interpretation of the term "covered claim" under a different statute, *Greenfield* is inapplicable to the instant matter and the Commissioner's reliance upon *Greenfield* is therefore misplaced.

█ In an effort to preserve Westmoreland's assets, it was the Commissioner's policy to encourage attorneys to continue to handle claims "in the normal manner" during suspension, as shown in the December 4, 1987 letter and as acknowledged by the Deputy Commissioner at hearing.[5] Upon learning of Westmoreland's suspension, Claimants immediately informed Department officials that Claimants would not render further services to Westmoreland until they had assurance of the payment of their attorney's fees incurred during suspension. The Department's officials assured Claimants that their attorney's fees would be paid as administrative expenses, and unless specifically asked, deliberately avoided advising all counsel that their fees might not be paid in the event of Westmoreland's liquidation. Consequently, Claimants established by clear and unequivocal evidence that they in good faith justifiably relied to their detriment upon the Commissioner's representations that their attorney's fees would be honored as administrative expenses even if submitted after liquidation, thus satisfying all necessary elements of equitable estoppel.

The Commissioner argues that the doctrine of equitable estoppel is inapplicable to this matter because Section 544 does not permit her to designate Claimants' claims as costs and expenses of administration. In support, the Commissioner relies upon *Central Storage & Transfer Co. v. Kaplan,* 487 Pa. 485, 410 A.2d 292 (1979), which held that "the Commonwealth or its subdivisions and instrumentalities cannot be estopped 'by the acts of its agents and employees if those acts are outside the agent's power, in violation of positive law, or acts which require legislative or executive action.'" *Id.,* 487 Pa. at 489, 410 A.2d at 294

---

5. During hearings, the Commissioner raised hearsay objections to the witnesses' testimony concerning statements made to Mr. Cline and Claimants by Department officials. However, those statements were admissible because they were offered not to prove their truth but to prove the necessary elements of equitable estoppel—inducement of Claimants by Department officials to provide legal services to Westmoreland and Claimants' justifiable reliance to their detriment. *Semieraro v. Commonwealth Utility Equipment Corp.,* 518 Pa. 454, 544 A.2d 46 (1988).

(quoting *Kellams v. Public School Employes' Retirement Board*, 486 Pa. 95, 100, 403 A.2d 1315, 1318 (1979)).

More recently, the Pennsylvania Supreme Court held in *Chester Extended Care Center* that the medicare providers' reliance upon assurance from the Department of Public Welfare in continuing to provide care to patients could support a claim of estoppel although payments made by the Department were in derogation of statutory law. The Court stated that "[a]lthough it is the general rule that estoppel against the government will not lie where acts of its agents are in violation of positive law ..., this rule cannot be slavishly applied where doing so would result in a fundamental injustice. It would clearly be a fundamental injustice to hold appellant herein responsible for its Medicare Assistance patients." *Id.*, 526 Pa. at 357, 586 A.2d at 382 (citation omitted).[6] Thus, even assuming, without deciding, that Claimants' attorney's fees do not fall within the category of costs and expenses of administration under Section 544(b) of the Act, the doctrine of equitable estoppel must be applied to prevent "a fundamental injustice" to Claimants. Therefore, Claimants' claims should be evaluated under Section 544(b) as costs and expenses of administration.

Accordingly, Claimants' exceptions to the referee's findings of fact and recommendation must be granted.

## ORDER

AND NOW, this 21st day of February, 1992, the exceptions filed by Claimants, Gallagher, Reilly and Lachat and

6. *See also Department of Public Welfare v. Moran* 84 Pa.Commonwealth Ct. 554, 480 A.2d 356 (1984) (the Department was estopped from asserting that attorney's entitlement to fees for representing social security claimant was precluded by federal law for failure to obtain approval of the Social Security Administration); *Matson v. Housing Authority of City of Pittsburgh,* 353 Pa.Superior Ct. 588, 510 A.2d 819 (1986) (the Authority was estopped from denying payment of accumulated vacation and sick leave to resigning employees based upon its failure to comply with federal regulations prohibiting those payments, since the employees had detrimentally relied upon personnel policy allowing those payments).

Duane, Morris and Heckscher, to the hearing referee's findings of fact and recommendation are granted. The Insurance Commissioner is directed to evaluate the claims of Gallagher, Reilly and Lachat and Duane, Morris and Heckscher for legal services rendered to Westmoreland Casualty Company as claims under Section 544(b) of the Act of May 17, 1921, P.L. 789, 40 P.S. § 221.44(b).