J-S01036-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| C.A.H. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| J.J.H. | : | No. 1518 MDA 2018 |

Appeal from the Order Entered August 17, 2018
In the Court of Common Pleas of York County Civil Division at No(s):
2018-FC-000291-03

| | | |
|---|---|---|
| C.A.H. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| J.J.H. | : | No. 1729 MDA 2018 |

Appeal from the Order Entered September 20, 2018
In the Court of Common Pleas of York County Civil Division at No(s):
2018-FC-000291-03

BEFORE:   PANELLA, P.J., MURRAY, J., and PELLEGRINI*, J.

MEMORANDUM BY PELLEGRINI, J.:               **FILED MARCH 05, 2019**

C.A.H. (Stepmother) appeals from a September 20, 2018 order of the Court of Common Pleas of York County (trial court) awarding sole legal custody and shared physical custody of S.L.H., a female born in July 2001, and G.K.H., a male born in May 2006 (collectively, the Children), to J.J.H.

_____

* Retired Senior Judge assigned to the Superior Court.

(Mother). That order further awarded Mother with primary physical custody of the Children beginning at the conclusion of the 2018-2019 school year. It also found Stepmother in contempt of a prior interim custody order for not disclosing to Mother that she was receiving the Children's Social Security death benefits, imposing a sanction of $500. After careful review, we affirm the trial court order of September 20, 2018, except we vacate for that portion finding Stepmother in contempt and imposing a $500 fine.[1]

This matter arose following the death of the Children's father, D.G.H. (Father) in January 2018. Prior to his death, Father had primary physical custody of the Children while Mother, who is Father's former spouse, exercised partial physical custody every other weekend during the school year and every other week during the summer. The parents shared legal custody. In addition to the Children, Father resided with Stepmother and the Children's half-sibling, C.W.H., while Mother resided with her husband, R.H., and the Children's half-siblings, B.S. and J.H.

---

[1] After the completion of the hearings, so that the parties could prepare for the 2018-2019 school year, the trial court entered an order on August 17, 2018, to provide the parties with temporary guidance until it issued its final order which occurred September 20, 2018. Stepmother appealed the August 17, 2018 order to us which is docketed at 1518 MDA 2018. We quash this appeal because it is not a final order. See Pa.R.A.P. 341(b). "[A] custody order will be considered final and appealable only if it is both: 1) entered after the court has completed its hearings on the merits; and 2) intended by the court to constitute a complete resolution of the custody claims pending between the parties." G.B. v. M.M.B., 670 A.2d 714, 720 (Pa. Super. 1996). We note that the parties only addressed the September 20, 2018 order in their briefs.

Within a month of Father's death, both parties had filed a petition or a complaint involving custody of the children. Mother requested sole physical and legal custody of the Children while Stepmother requested primary physical and shared legal custody.

**I.**

Before we begin, to better understand what follows, it is worthwhile to set the well-settled law regarding custody disputes like this one. Of particular importance to this case, it is well-established that parents have a constitutional right to the care, custody and control of their children, and that allowing a third party to seek custody of a child burdens that right. *See K.W. v. S.L.*, 157 A.3d 498, 502-03 (Pa. Super. 2017) (quoting *Hiller v. Fausey*, 904 A.2d 875, 885 (Pa. 2006)) ("As our Supreme Court has emphasized, 'the right to make decisions concerning the care, custody and control of one's children is one of the oldest fundamental rights protected by the Due Process Clause' of the Fourteenth Amendment."). And, "whenever a custody dispute arises between the parents and a third party, 'the evidentiary scale is tipped, and tipped hard, to the parents' side.'" *D.P. v. G.J.P.*, 146 A.3d 204, 212 (Pa. 2016) (quoting *Hiller*, 904 A.2d at 887). § 5327 of our child custody statute, entitled "Presumption in cases concerning primary physical custody," provides as follows.

> **(b) Between a parent and third party.--**In any action regarding the custody of the child between a parent of the child and a nonparent, there shall be a presumption that custody shall be awarded to the parent. The presumption in favor of the parent may be rebutted by clear and convincing evidence.

23 Pa.C.S. § 5327(b).

"With all of that in mind, when a trial court orders a form of custody, the best interest of the child is paramount." ***S.W.D. v. S.A.R.***, 96 A.3d 396, 400 (Pa. Super. 2014) (citation omitted). The factors that trial courts must consider when determining what is the best interest are set forth at 23 Pa.C.S. § 5328(a) which provides:

a. **Factors.--**In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a). Now to the proceedings before the trial court.

**II.**

Before holding the custody hearing, the trial court issued several interim orders that are not relevant here.[2] After conclusion of the hearings at the beginning of August 2018, the trial court entered on August 17, 2018, a temporary order that provided guidance to the parties for the upcoming school year. It then issued its September 20, 2018 final order awarding sole legal custody to Mother and shared physical custody to both parties for the 2018-2019 school year, with exchanges occurring each Sunday evening. Beginning at the conclusion of the school year, the trial court awarded primary physical custody of the Children to Mother and partial physical custody to Stepmother every other weekend starting on Friday afternoon and ending on Monday morning.

In its accompanying opinion, the trial court addressed each of the § 5328(a) factors explaining at length its decision to award sole legal and shared physical custody to Mother, followed by primary physical custody following the 2018-2019 school year. Most significantly, the court found that Mother was more likely to promote the Children's relationship with Stepmother than

---

[2] By interim orders, the trial court awarded shared legal custody to both parties and primary physical custody to Stepmother with Mother receiving partial physical custody three out of every four weekends during the school year and on alternating weeks during the summer. In May of 2018, the trial court entered an additional interim order awarding primary physical custody to Mother beginning on June 17, 2018 and partial physical custody to Stepmother three out of every four weekends going forward.

- 6 -

Stepmother is to promote the Children's relationship with Mother, and that Stepmother attempted to "usurp" Mother's role as a parent following Father's death.  Trial Court Opinion, 9/20/18, at 5-6, 9-11, 13-15.

The court summarized its conclusions as follows.

. . . . Ultimately, in looking at the factors as a whole, most of the factors either favor Mother or are neutral.  The Court must look to the best interest of the [C]hildren and determine whether there is any compelling reason to justify taking primary custody away from Mother.  The Court does find, on a temporary basis, such reasons exist.

***

In looking at the best interest of SLH, she is seventeen.  Her friends, especially those on her school volleyball team, are very important to her.  She has a job.  She is going to be a junior in school.  She will be eighteen in July 2019, prior to the start of her senior year in high school.  She demonstrated a high degree of maturity during her interview with the Court.  It is reasonable for a seventeen-year-old to be more concerned about maintaining her friends and her school than being in the custody of either Mother or Stepmother.  Her desire to remain in her current school was a well-reasoned preference that the Court found rose to the level of compelling and convincing.  In order for her to maintain her school, she must be residing with Stepmother at least 50% of the time.  Therefore, this reason alone justifies an award of 50/50 custody for the 2018-2019 school year.  Maintaining SLH in her school is especially important given that she would likely return there next year once she turns eighteen if she were not maintained there now.

The same considerations with regard to school do not apply to GKH.  He will have a longer period of time to be in the custody of a parent during his minority.  Additionally, he is entering the middle school.  Now is the time to transition him to Mother's school district so that he can become involved with his peers and school teams at a time when school[-]based athletics become more important.  By maintaining his current non-school athletic program for the next year, he will have a bridge from maintaining his old friends to developing his new ones.  While the Court

considered giving Mother primary custody of this child during the school year, the compelling reason to also maintain shared custody with him is to allow him to always be where his sister is. While the older child is working, going to school, and involved in athletics, she is not likely to be in either household during her waking hours on a consistent basis. Nonetheless, the shared experiences and bond between the two [C]hildren was significant enough that they should not be separated in the short term. When SLH turns eighteen, it will be up to her to decide how she can maximize the time she will be spending with her brother. During the summer months, there is no compelling reason why the [C]hildren should not be with Mother.

The Court considers the factors outlined by § 5328 of the Custody Act as outlined above in rendering a decision that is in the best interests of the [C]hildren. Therefore, for the reasons outlined above, the Court finds that there are no compelling or convincing reasons why Mother should not have sole legal custody. In short, on the legal custody issue, Stepmother has failed to meet any burden associated with granting her legal custody. With regard to physical custody, maintaining the older child in her school and maintaining the two [C]hildren at issue on the same schedule do rise to the level of compelling reasons for a shared physical custody arrangement during the upcoming school year until such time as the older child reaches the age of eighteen. The transition period will allow the younger child to adjust to primary custody with his surviving parent going forward. The [C]hildren will transition into a shared physical custody schedule for the 2018-2019 school year, and then Mother will retain primary physical custody with Stepmother having partial physical custody. . . .

*Id*. at 15-17.

The trial court also found Stepmother in contempt for failing to notify Mother that she had applied for and was receiving the Children's Social Security death benefits without notifying Mother as required and imposed a sanction of $500. The court described Stepmother's actions as "willful and

clearly designed to keep the money from Mother." *Id*. at 13. This appeal followed.[3]

### III.

On appeal, Stepmother raises the following ten issues claiming that the trial court erred as a matter of law and/or abused its discretion:

> 1. by failing to apply the "best interest" standard in rendering its decision?
>
> 2. by failing to appropriately assess the evidence for the determination of the Children's best interests?
>
> 3. because it was contrary to the best interests of the Children harming them and placing them at risk?
>
> 4. in pre-determining the final outcome of the matter at the pre-trial conference?
>
> 5. in refusing to permit [M.A.B.] to be qualified as an expert witness?

_____

[3] Our standard of review in child custody cases is as follows.

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*V.B. v. J.E.B.*, 55 A.3d 1193, 1197 (Pa. Super. 2012) (citations omitted).

6. misapplied Pa.R.E. 704 under the mistaken belief that any expert opinion embraces an ultimate issue should not be allowed.

7. in failing to render its final decision within 15 days as required by Pa.R.C.P. No. 1915.4?

8. when it *sua sponte* considered facts not of record?

9. in *sua sponte* finding Step[m]other in contempt?

10. Whether the *prima facie* presumption presently applied to child custody proceedings and to third-party stepparents that stand *in loco parentis* versus natural parents should be modified so as to better achieve the best interest of the child?

Stepmother's brief at 4-5.

## A.

Because they are interrelated, we will begin by addressing Stepmother's first, fourth and tenth issues together. In her first issue, Stepmother argues that the trial court erred and/or abused its discretion by failing to apply the correct standard when making its custody award. She maintains that the court based its decision solely on the presumption that Mother should receive primary physical custody of the Children because she is their natural parent and failed to consider the Children's best interests. In her fourth issue, Stepmother argues that the court prejudged the case at the parties' pre-hearing conference. She bases this argument primarily on the court's statement during the conference that the presumption in favor of parents is so strong that, although "they haven't quite reached you need to find the parent unfit, . . . we're getting awfully close to that." N.T., 5/25/18, at 3. Finally, Stepmother asserts in her tenth issue that this Court should conduct

"an examination" of the presumption favoring parents in child custody cases and conclude that a stepparent may stand on equal footing with a parent in certain circumstances. We disagree.

Stated plainly, Mother has a constitutional right to the custody of the Children. In order to protect this right, our child custody statute presumes that the trial court should award primary physical custody to her. However, it also provides Stepmother with the opportunity to rebut this presumption by proving that an award of primary physical custody to Mother would be contrary to the Children's best interests by clear and convincing evidence. Upon careful review of the court's opinion and the transcripts of the hearing in this case, it is clear that the court understood and applied the standard correctly. The court referenced the presumption that Mother should receive primary physical custody, as well as the controlling weight given to the Children's best interests throughout its opinion. ***See***, ***e.g.***, Trial Court Opinion, 9/20/18, at 2 ("In custody disputes, the controlling question and paramount concern of the court is the best interests of the child, and all other considerations are deemed subordinate to the child's physical, intellectual, moral, and spiritual well-being."). Therefore, we see no basis upon which to reverse the court's order. While Stepmother argues that the trial court prejudged this matter at the parties' pre-hearing conference, the record refutes that contention as well. Counsel for Stepmother expressed this concern during the conference and the court clarified that it had not yet made its decision. The court explained that

it was merely being honest with the parties about the heavy burden of proof borne by Stepmother. N.T., 5/25/18, at 23 ("I haven't predisposed the case. I am acknowledging the legal standard. The legal standard is parents and non-parents are not on equal footing.").

Finally, with respect to Stepmother's tenth issue, she makes no effort to argue that the presumption found at § 5327(b) of our child custody statute is unconstitutional or that this Court otherwise possesses the power to set aside or modify the duly-enacted legislation of our General Assembly. As such, she is not entitled to relief.

**B.**

Next we will address Stepmother's second and third issues. Stepmother argues in her second issue that the trial court erred and/or abused its discretion by failing to assess the evidence appropriately when determining the Children's best interests. Stepmother's brief at 18-39. Stepmother's third issue is that the court's decision was contrary to the Children's best interests, thereby harming them and "placing them at risk." *Id*. at 39-48. Stepmother takes issue with most if not all of the court's factual findings pursuant to § 5328(a), insisting that the court should have weighed the evidence differently and reached conclusions more favorable to her. *Id*. at 18. Among other things, Stepmother contends that she encouraged the Children's relationship with Mother while Mother hindered the Children's relationship with her, and that Mother "possibly" drove drunk with the Children in the car during a recent

camping trip. *Id*. at 18-21, 29-38. Stepmother further contends that the Children want to continue residing with her and that transitioning the Children to Mother's custody will cause them emotional trauma. *Id*. at 40-48.

We discern no abuse of discretion by the trial court. As discussed above, our law presumes that a parent should exercise primary physical custody of his or her child, and that a third party may only overcome that presumption by clear and convincing evidence. In the instant matter, the record confirms the court's finding that Stepmother failed to overcome the presumption. Most notably, the record supports the court's finding that Mother is more likely to encourage the Children's relationship with Stepmother than Stepmother is to encourage the Children's relationship with Mother. The record is replete with examples of Stepmother failing to encourage or directly impeding Mother's relationship with the Children. This includes Stepmother's refusal to allow Mother to attend Father's funeral, Stepmother's act of blocking Mother on her phone, and Stepmother's failure to involve Mother in important events in S.L.H.'s life, including her medical care. *See* N.T., 8/2/18, at 157-60, 170, 176, 179-83. For example, Mother testified that Stepmother took S.L.H. to a medical appointment, during which the child received prescription medication, but did not inform Mother until the following day. *Id*. at 179-81. During a subsequent incident, Mother discovered from S.L.H. that the child had a medical appointment only forty-five minutes before it was scheduled to occur. *Id*. at 182-83.

While Mother acknowledged that she engaged in similar conduct by instructing G.K.H.'s school that Stepmother could no longer pick him up, she explained that she did this only after an incident during which Stepmother picked up S.L.H. from an orthodontist appointment without alerting her first. N.T., 8/2/18, at 161; N.T., 8/9/18, at 48. Mother explained, "I went to pick [S.L.H.] up from it, and she texted me and said, don't come. I'm not there. . . . she was at Red Lobster with [Stepmother]." N.T., 8/2/18, at 161. Mother continued, "I thought with [Stepmother] picking her up and knowing I was coming and not making me aware of that, I was afraid the same thing would happen with [G.K.H.]." *Id*.

In addition, we stress that the record refutes Stepmother's allegation that Mother drove drunk with the Children in the car following a camping trip. Mother testified that she took S.L.H. camping with some family friends.[4] N.T., 8/9/18, at 24-25, 51-52. During that evening, Mother and others sat around a bonfire. *Id*. at 25. Mother testified that she had "two beers" during this time. *Id*. at 52. Several hours later, at three o'clock in the morning, two of the other campers began an altercation. *Id*. at 24-25, 52. As the altercation escalated, Mother took S.L.H. and left the campsite. *Id*. at 25. Therefore, Mother acted appropriately by removing S.L.H. from a potentially hazardous

---

[4] G.K.H. was at a birthday party at the time. N.T., 8/9/18, at 51.

situation and the record contains no indication that she was drunk while doing so.

Finally, while Stepmother argues that this Court should reweigh the evidence and make its own factual findings contrary to those of the trial court, this Court is not at liberty to comply with Stepmother's request. *See V.B.*, 55 A.3d at 1197. We have explained the deference we must extend to trial courts in child custody matters as follows.

> [W]e have consistently held that the discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert,* 902 A.2d 533, 540 (Pa. Super. 2006) (quoting *Jackson v. Beck,* 858 A.2d 1250, 1254 (Pa. Super. 2004)). Stepmother is not entitled to relief.

## C.

Stepmother's fifth issue is that the trial court erred and/or abused its discretion by failing to qualify her witness, M.A.B., as an expert pursuant to Pa.R.E. 702. Stepmother's brief 52-55. M.A.B. is a family physician and Stepmother sought to present her opinion as to the custody arrangement that would serve the Children's best interests. Stepmother also asserts that the court erred to the extent that it concluded that expert testimony would not be valuable in this case. *Id*.

- 15 -

"The admission of expert testimony is a matter committed to the discretion of the trial court and will not be disturbed absent an abuse of that discretion." ***Nobles v. Staples***, ***Inc.***, 150 A.3d 110, 113 (Pa. Super. 2016). Rule 702 provides as follows.

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson;
>
> (b) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and
>
> (c) the expert's methodology is generally accepted in the relevant field.

Pa.R.E. 702.

Additionally, this Court has provided the following explanation of the standard that a witness must meet in order to testify as an expert.

> It is well established in this Commonwealth that the standard for qualification of an expert witness is a liberal one. The test to be applied when qualifying an expert witness is whether the witness has any reasonable pretension to specialized knowledge on the subject under investigation. If he does, he may testify and the weight to be given to such testimony is for the trier of fact to determine. It is also well established that a witness may be qualified to render an expert opinion based on training and experience. Formal education on the subject matter of the testimony is not required . . . . It is not a necessary prerequisite that the expert be possessed of all of the knowledge in a given field, only that he possess more knowledge than is otherwise within the ordinary range of training, knowledge, intelligence or experience.

*Miller v. Brass Rail Tavern*, *Inc.*, 664 A.2d 525, 528 (Pa. 1995) (citations and emphasis omitted).

While Stepmother is correct that M.A.B. is likely an expert in family medicine, she fails to explain how that expertise would render M.A.B. qualified to offer an opinion in this child custody case. Stepmother does not allege that M.A.B. has any experience conducting custody evaluations. Moreover, M.A.B. has had only minimal contact with Mother and is not the Children's treating physician. As Stepmother acknowledges, M.A.B. is a family friend who "had known Father, Step[m]other and the [C]hildren for approximately five years and had a close personal relationship with the Children due to her own [c]hildren's relationship with [them]." Stepmother's brief at 53. Thus, any opinion that M.A.B. might offer would be highly suspect. It was proper for the trial court to deny Stepmother's request to qualify M.A.B. as an expert.

**D.**

Next, Stepmother argues in her sixth issue that the trial court erred and/or abused its discretion by misapplying Pa.R.E. 704, which provides that "[a]n opinion is not objectionable just because it embraces an ultimate issue." Stepmother's brief at 55-58. Stepmother asserts that the court did not permit or consider the testimony of her four purported expert witnesses, including M.A.B., based on its belief that their testimony would concern the ultimate issue in the case. *Id*. In support of her position, Stepmother directs us to the following exchange during the hearing.

[Stepmother's counsel]: And I think the Judge will have to rule on that. That is why I provided Pennsylvania Rule of Evidence 704, which says an opinion is not objectionable just because it embraced --

THE COURT: Well, here's the thing. In order to make a custody evaluation -- or, custody determination, they have to have had an opportunity to meet with all parties. So my question would be, what opportunities has Mother had to be involved in any of the discussions or evaluations?

[Stepmother's counsel]: And, Your Honor, I tried to cover that with each of the witnesses so they can give their testimony regarding that.

THE COURT: Okay.

[Mother's counsel]: And then Patty -- or, Patricia Slough[5] would be the final one. Again, I don't have an issue with her testifying to the work she's done with the [C]hildren, but again, any reference to a recommendation as to custody I would find objectionable because Mother has not been participating. In her own report, she says Mother has not been participating in the sessions.

THE COURT: Well, I appreciate a recommendation because it goes to the ultimate issue isn't per se objectionable. There is a specific procedure we follow for someone to be able to give a recommendation for custody, and that is, that they do a custody evaluation.

So unless there's been a custody evaluation, and they have laid the groundwork for that, you know, they're not going to be able to give an opinion with regard to custody. And I would sustain an objection, you know, with regard to that.
It's not just that you're an expert. It's, you know, what steps have you gone through in order to reach your conclusion.

---

[5] Ms. Slough was the Children's equine therapist and one of Mother's proposed expert witnesses.

N.T., 8/2/18, at 8-9.

Stepmother appears to have misunderstood the trial court's statements. The court did not indicate that it would exclude the opinions of Stepmother's witnesses because they embraced the ultimate issue in the case. The court acknowledged that an expert's opinion "because it goes to the ultimate issue isn't per se objectionable." *Id*. at 9. Instead, it is apparent that the court's primary concern was that Stepmother's witnesses had little if any interaction with Mother and knew little if anything about her other than what Stepmother and the Children may have told them. Under the circumstances, the witnesses could not possibly conduct a comprehensive and objective custody evaluation and their opinions as to custody would be speculative at best. As stated above, M.A.B.'s opinion would have been particularly suspect give her status as Stepmother's family friend. We discern no abuse of discretion or error of law.

**E.**

In her seventh issue, Stepmother contends that the trial court erred and/or abused its discretion by failing to issue its September 20, 2018 custody order within fifteen days of the conclusion of the custody hearing on August 9, 2018, pursuant to Pa.R.C.P. 1915.4(d). Stepmother's brief at 58-61. She argues that the court's delay in issuing its order prejudiced her in that it caused her to file an unnecessary appeal from the temporary order entered on August 17, 2018. *Id*. Pa.R.C.P. 1915.4(d) provides as follows.

- 19 -

**(d) Prompt Decisions.** The judge's decision shall be entered and filed within 15 days of the date upon which the trial is concluded unless, within that time, the court extends the date for such decision by order entered of record showing good cause for the extension. In no event shall an extension delay the entry of the court's decision more than 45 days after the conclusion of trial.

Stepmother is correct that the trial court should have issued its final decision within fifteen days or entered an order extending the time to issue its decision based upon a showing of good cause. However, the court's delay in issuing its final decision is clearly a harmless error. *See In re M.T.*, 607 A.2d 271, 281 (Pa. Super. 1992) (citing *Semieraro v. Commonwealth Utility Equipment Corp.*, 544 A.2d 46, 47 (Pa. 1988)) (observing that an error must actually harm an appellant to justify awarding a new trial). While Stepmother may have experienced some confusion or inconvenience due to the court's delay, any resulting prejudice is *de minimis* and does not warrant awarding a new hearing.

**F.**

Stepmother's eighth issue is that the trial court erred and/or abused its discretion by considering *sua sponte* facts not of record. Stepmother's brief at 61. This issue relates entirely to the court's finding in its opinion that the middle school G.K.H. would attend if he were living with Mother "is closer to Stepmother's house, though no testimony was offered as to the distance." Trial Court Opinion, 9/20/18, at 10.

We agree with Stepmother that the trial court should not have made a finding as to the distance between her home and G.K.H.'s prospective middle school if there was no evidence in the record to support it. However, this again was harmless error. The finding seems to have had little, if any, influence on the court's custody award.

**G.**

Finally, Stepmother argues in her ninth issue that the trial court erred and/or abused its discretion by finding her in contempt because she did not notify Mother that she was receiving the Children's Social Security death benefits. Stepmother's brief at 61-65. Stepmother emphasizes that Mother did not file a contempt petition or otherwise request that the court make a contempt finding. *Id*. at 62-64. She further contends that the court heard no evidence that she acted with wrongful intent. *Id*. at 64-65.

As is the case with child custody orders in general, we review a custody contempt order pursuant to an abuse of discretion standard of review. *Garr v. Peters*, 773 A.2d 183, 189 (Pa. Super. 2001). Our child custody statute provides as follows with respect to contempt and the award of sanctions.

**(g) Contempt for noncompliance with any custody order.—**

(1) A party who willfully fails to comply with any custody order may, as prescribed by general rule, be adjudged in contempt. Contempt shall be punishable by any one or more of the following:

(i) Imprisonment for a period of not more than six months.

(ii) A fine of not more than $500.

(iii) Probation for a period of not more than six months.

(iv) An order for nonrenewal, suspension or denial of operating privilege under section 4355 (relating to denial or suspension of licenses).

(v) Counsel fees and costs.

(2) An order committing an individual to jail under this section shall specify the condition which, when fulfilled, will result in the release of that individual.

23 Pa.C.S. § 5323(g).

To support a finding of civil contempt, the trial court must determine "(1) that the contemnor had notice of the specific order or decree which she is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent." **Harcar v. Harcar**, 982 A.2d 1230, 1235 (Pa. Super. 2009). In addition, the court should comply with the following five elements to ensure due process in a civil contempt proceeding: "(1) a rule to show cause why attachment should issue; (2) an answer and hearing; (3) a rule absolute; (4) a hearing on the contempt citation; and (5) an adjudication." **Id**. at 1234-35. However, compliance with all five of these elements is not mandatory. **Id**. at 1235. "'[T]he essential due process requisites for a finding of civil contempt are notice and an opportunity to be heard.'" **Id**. (quoting **Schnabel Assoc. v. Building & Construction Trades Council of Philadelphia**, 487 A.2d 1327, 1334 (Pa. Super. 1985)).

As Stepmother argues, the record reveals that the trial court found her in contempt without warning in its September 20, 2018 order.[6] Stepmother did not have notice that she was facing a possible contempt finding nor did she have the opportunity to be heard. Thus, the court violated Stepmother's right to due process and we vacate the portion of the court's order finding her in contempt and imposing a sanction of $500.

In summation, we conclude that the trial court's August 17, 2018 order is interlocutory and we quash Stepmother's appeal at Superior Court docket number 1518 MDA 2018. With respect to Stepmother's appeal at Superior Court docket number 1729 MDA 2018, we vacate the portion of the September 20, 2018 order finding Stepmother in contempt and imposing a sanction of $500 without notice and the opportunity to be heard. Because we discern no other abuses of discretion or errors of law, we affirm the order in all other respects.

Appeal at 1518 MDA 2018 is quashed. Appeal at 1729 MDA 2018 is affirmed except that we vacate that portion finding Stepmother in contempt and imposing a $500 fine. Jurisdiction relinquished.

---

[6] The trial court stated at the conclusion of the hearing that Stepmother's actions were "a violation of the legal custody and the financial provisions of the court order" but did not indicate that it would find her in contempt or provide her with the opportunity to respond. N.T., 8/9/18, at 165.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>03/05/2019</u>